193 N.J. Super. 603 (1984)
475 A.2d 626
SHAKEH VARTENISSIAN, PLAINTIFF-APPELLANT,
v.
FOOD HAULERS, INC., A NEW JERSEY CORPORATION, J.E.K., AND RITEWAY RENTALS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1984.
Decided February 9, 1984.
*606 Before Judges MICHELS and DREIER.
Ned J. Parsekian argued the cause for appellant (Parsekian & Solomon, attorneys; Melvin R. Solomon, on the brief).
Norman S. Costanza argued the cause for respondents (Morrison & Morrison, attorneys; Gloria B. Cherry, on the brief).
The Opinion of the Court was delivered by: DREIER, J.A.D.
Plaintiff appeals from a Law Division judgment in favor of defendants entered after a jury verdict apportioning plaintiff's *607 negligence at 80% and the defendant truck driver's negligence at 20%. Defendants are the corporate owner, lessee and individual operator of the tractor-trailer with which plaintiff's Chevette collided. The accident occurred at a "Y" intersection. Plaintiff was proceeding down the left arm of the "Y", Harrington Avenue, which was controlled by a stop sign as one approached the intersection. The tractor-trailer driven by defendant J.E.K. was on the through street, Knickerbocker Road, proceeding downhill on the other arm of the "Y", intending to continue along the stem of the "Y". The accident occurred in heavy rush hour traffic on a wet and foggy morning, April 27, 1979.
Plaintiff testified that she stopped at the stop sign for a considerable period of time because of her unfamiliarity with the area, and slowly made a left turn (according to a County Engineer the angle of the intersection was just over 142° ). Plaintiff further testified that the way appeared clear and when she "was in the south position just ready to start going south, all of a sudden, this mountain came over me, and that's all I remember." Defendant J.E.K. testified that because of the rain he was travelling at a speed of only 30 to 35 miles per hour and as he approached the intersection he slowed the truck down to 20 to 25 miles per hour, since he knew it was a "crazy" intersection. He saw plaintiff's car at the intersection and that "for some reason the Chevette came over onto this [his] lane and cut right over here towards the curb." He took evasive action by applying his brakes and swinging to the left so that he would not hit plaintiff head-on. He thought he had missed the Chevette entirely until, after the accident, he found the driver side of plaintiff's car embedded into the lower passenger side of his tractor, a fact corroborated by a newspaper photograph entered into evidence at the trial.
Plaintiff has urged a reversal based upon four alleged errors. First, defendants' incorrect answers to interrogatories prejudiced plaintiff; second, the court's charge was inadequate; third, plaintiff was improperly precluded from presenting evidence *608 of defendant J.E.K.'s prior criminal conviction, and fourth, the court failed to give reasons for denying plaintiff's motion for a new trial. We determine that the first and third issues do not substantiate a claim of error, and that the second and fourth, although properly noting trial errors, were insufficient  considering the posture of this case before the jury  to be reversible errors under R. 2:10-2.
In defendants' answers to plaintiff's interrogatories defendant J.E.K. denied giving any statement with respect to the accident, and knowing of any photographs other than those taken by the police. During his direct examination he testified that he gave the police a verbal statement and also gave a statement to a representative from his employer's company who took him to the scene because he wanted to take pictures of the scene. He was cross-examined concerning the statement and his apparently contrary interrogatory answers. Plaintiff's counsel thus used these apparent inconsistencies to impeach J.E.K.'s credibility.
Plaintiff now argues that had these photographs been produced they may have lead to a definitive establishment of the point of collision, which she contended was in her southbound lane and defendant J.E.K. contended was in the northbound lane. This argument has two flaws. First, the photographs were taken approximately three hours after the accident, and no foundation could be laid as to whether there had been a substantial change in the condition of the intersection after the accident. Neither the parties nor the photographer could have known whether the intersection had been swept or whether debris, if it were shown, had been either moved by passing vehicles or in fact may have come from other sources. Therefore, there was an unlikelihood that these photographs, even if located, would have been admissible. A second and more persuasive argument is that plaintiff never requested an adjournment to have the photographs searched for and produced and, if necessary, the photographer deposed, all of which *609 could have been accomplished in a few hours' time. At most, a one day adjournment would have been necessary. Instead, plaintiff elected to use the newly revealed information to impeach defendant's credibility. Having made this selection, plaintiff will not be permitted at this late date to urge as error the failure of the trial judge to direct production of the alleged photograph or statements. Plaintiff's counsel made a tactical trial decision and will be bound by it. Cf. State v. Harper, 128 N.J. Super. 270, 276-277 (App.Div.), certif. den. 65 N.J. 574 (1974).
As to the adequacy of the court's charge, we agree with plaintiff that there were substantial deficiencies. The trial court did charge the jury generally as to the duties owed in a negligence case. Plaintiff's counsel objected specifically to the failure to charge the specific duties owed with respect to the drivers of automobiles, the duty to make specific observations where one's view is obstructed or where vision is impaired and a specific charge on the responsibilities arising at an intersection controlled by a stop sign. Although all of the requested charges stated valid legal principles, they need not have been charged in the wording suggested by plaintiff. For example, as to the stop sign, the duty of defendant was noted in the requested charge only to be a "continuing duty to exercise due care." Had this charge been given, it would have been, we assume, coupled with a specific charge under N.J.S.A. 39:4-144 which not only required plaintiff stopping at the stop sign, but proceeding "only after yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard." The failure so to charge was of far greater damage to defendant than plaintiff.
Given the wet and foggy weather conditions and the odd configuration of this intersection the court should also have charged as to other statutes and the import of model charge number 5.18 governing the general duty owing between operators of motor vehicles. In this case, however, the factual *610 dispute between the two drivers was sharply drawn, and the jury was presented with a credibility issue: if plaintiff turned into the path of defendant's truck, there should be no recovery; if defendant swerved to hit plaintiff on her side of the road, the verdict should have been in her favor. Whatever errors the judge may have made in his charge did not bring about any change in this basic issue presented to the jury, and thus were not "clearly capable of producing an unjust result." R. 2:10-2. It would have been better if the judge charged the jury from some additional applicable statutes such as maintaining "appropriate reduced speed ... when special hazard exists with respect to ... weather or highway conditions," N.J.S.A. 39:4-98, and, when making a left-hand turn "[n]o person shall turn a vehicle at an intersection ... unless and until such movement can be made with safety." N.J.S.A. 39:4-126 (incorporating N.J.S.A. 39:4-123). Plaintiff, however, did not request any of these statutes to be charged, nor was there an objection to the court's failure so to charge. Without such objection, from which the trial judge would have had an opportunity to cure the defect, we will not consider the deficiency on appeal. R. 1:7-2.
The judge also failed to give an ultimate outcome charge as required by Roman v. Mitchell, 82 N.J. 336, 345-347 (1980). The charge was omitted here but, as in the case of the motor vehicle statutes, counsel took no exception to its omission. Since, as noted earlier, this case was obviously determined upon the jury's assessment of the behavior of the two drivers, having made that assessment, the jury could not have found that defendant J.E.K. was more negligent than plaintiff. The omission of this ultimate outcome charge was also harmless error. R. 2:10-2.
As to the third issue raised, the court's preclusion of the use of defendant's 1958 robbery conviction to impeach his credibility, the trial judge acted within the bounds of his discretion. N.J.S.A. 2A:81-12 was specifically limited in State v. Sands, 76 N.J. 127, 144 (1978) (as to a criminal defendant) and State v. *611 Balthrop, 92 N.J. 542 (1983) and State v. Harkins, 177 N.J. Super. 397, 401 (App.Div. 1981) (as to witnesses generally).
We have found but a single civil case to consider this issue, American Paint v. Public Serv. Elec. & Gas Co., 163 N.J. Super. 210, 212-213 (Law Div. 1978). This case was decided just after Sands, but before Balthrop and Harkins. Thus the court's limitation of the Sands' rationale to criminal defendants was understandable. As the Balthrop court noted, however, the Sands "standard, derived from Evid.R. 4, remains the same for all witnesses; but in applying that standard, the balance will necessarily be affected by whose credibility it is that is sought to be impeached by use of the prior conviction." 92 N.J. at 546. Although the Balthrop court did not mention the application of this rule to civil cases, the use of the term "all witnesses" is clear, and a court in a civil or criminal proceeding may apply the analysis called for by Evid.R. 4 in weighing prejudicial effect of admission of evidence of the criminal conviction against the probative effect of such evidence upon the credibility determination to be made by the jury. Accordingly, the statement to the contrary in American Paint v. Public Serv. Elec. & Gas Co. is disapproved.
The judge here stated that the effect of the 24-year old robbery conviction "would be more prejudicial than worthy." He noted further that it was "too prejudicial and plaintiff could not "prove it even as to credibility." Although Evid.R. 4 was not specifically mentioned, its standards were correctly applied.
Lastly, plaintiff contends that the trial judge erred in not issuing any reasons for his decision denying plaintiff's motion for a new trial. Under R. 1:6-2 there is no general requirement that there be findings of fact or conclusions of law rendered by a trial judge when deciding a motion. R. 1:7-4 requires such finding at the end of a bench trial, and upon some motions, such as those for summary judgment, the court must "find the facts and state its conclusions in accordance with R. 1:7-4." R. 4:46-2. Motions for a new trial are governed by R. 4:49-1 and the *612 granting of such a motion after a jury verdict requires that it "clearly and convincingly" appear to the judge "that there was a miscarriage of justice under the law" R. 4:49-1(a). Under subsection (c), if the court on its own initiative orders a new trial, it "shall specify in the order the grounds therefor." Although there are no opinions directly interpreting this rule, Judge Pressler in her Current N.J. Court Rules, Comment R. 4:49-1 (1983), paragraph 3, notes that in the 1969 Rules Revision, New Jersey adopted verbatim the 1966 amendment of Fed.R.Civ.P. 59(d). In 6A Moore's Federal Practice (2 ed. 1983) paragraph 59.11, at 59-269, the author states:
When the court grants or denies a party's motion for new trial the grounds therefor may be ascertained from a perusal of the party's motion, and thus, there is no express requirement that the court specify the grounds upon which it is acting, although in practice the district judge will often do so. On the other hand, when the court acts on its own initiative, subdivision (d) requires that the court `shall specify in the order the grounds therefor.' In the absence of such specification the order for new trial may be considered a nullity. [footnotes omitted].
We determine that there is no requirement for a statement of the court's grounds when a trial judge grants or denies a new trial motion for the reasons posited by the parties. Cherokee Laboratories, Inc. v. Pierson, 415 F.2d 85, 91 (10th Cir.1969), cert. denied 396 U.S. 1059, 90 S.Ct. 753, 24 L.Ed.2d 753 (1970); Gilliland v. Lyons, 278 F.2d 56, 58-59 (9th Cir.1960) [interpreting an earlier but similar version of F.R.Civ.P. 59]. Of course, it is preferable that in the granting or denial of a new trial (or any other motion) a judge states his or her reasons with particularity. If a new trial is ordered, we should not be forced to examine the moving papers and attempt to glean the judge's reasons. Even where the new trial is denied, and we thus may assume that the judge determined that there was no clear and convincing evidence of "a miscarriage of justice under the law," it is helpful if the judge specifies why the losing party's arguments were rejected; and if the reasons why the judge found such a lack of injustice are unclear, a remand would be proper to obtain such reasons.
*613 In any event, an appellate court is not to reverse the decision of a trial judge on a motion for a new trial "unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. In this case, it appears clear to us that there was no such failure of justice and that a remand would serve no purpose.
Affirmed.