197 N.J. Super. 518 (1984)
485 A.2d 338
CATHERINE DIMOGERONDAKIS AND GEORGE DIMOGERONDAKIS, PLAINTIFFS,
v.
ANTONIOS DIMOGERONDAKIS AND JAMES H. SURRETT, DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County.
Decided July 18, 1984.
*519 Andreas A. Boyadjis for plaintiffs.
Kevin A. Couch for defendant Dimogerondakis (O'Donnell, McCord, Leslie & O'Toole, attorneys).

*520 OPINION
MacKENZIE, J.S.C.
An ultimate outcome charge[1] is generally required when a plaintiff and one or more defendants are causally negligent. Roman v. Mitchell, 82 N.J. 336 (1980).[2] The rationale is that a jury will better fulfill its fact-finding function when it understands the effect of its determination of the percentage of fault allocable to each party upon the apportionment of damages. At this trial the Court was asked whether the jury should be instructed as to the effect of its verdict in a negligence action which involved a non-negligent plaintiff who had settled before trial with one of the two codefendants. This Court has determined that the wisdom and logic of Roman mandates such a jury instruction.
On May 9, 1982, plaintiff Catherine Dimogerondakis[3] was a passenger in a car owned and operated by her brother-in-law, Antonios Dimogerondakis (hereafter Antonios), on Route 46 in Clifton, New Jersey. That vehicle collided with an automobile owned and operated by defendant James H. Surrett (hereafter Surrett). Plaintiff sued both drivers, contending that their negligence proximately caused both the accident and her resulting *521 injuries. Each defendant denied negligence and cross-claimed against the other for contribution and indemnification.
Prior to trial, plaintiff settled with Surrett when the latter's insurer agreed to pay his full automobile insurance policy liability limit of $25,000. These parties exchanged general releases. Upon an application by Surrett's attorney, another judge of this Court then entered an Order dismissing with prejudice the complaint and also the cross-claims by Antonios against Surrett.
At trial, plaintiff sought to prove that Antonios had changed lanes on Route 46 at a time when such movement was unsafe. See N.J.S.A. 39:4-88(b). Antonios did not seek to prove that plaintiff was negligent.[4] Surrett corroborated the plaintiff's testimony. Antonios testified, however, that his car had not moved out of the right (slow) lane of traffic at any time prior to the impact. Antonios further described the collision as occurring when Surrett drove his car from the left (fast) lane directly into the rear of Antonios' car. Thus, the jury was presented with conflicting testimony as to where and how the accident had happened.
Liability for damages in cases when two or more defendants were deemed causally negligent by the trier of fact was formerly apportioned pro rata in accordance with the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1 et seq. The Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., now makes each tortfeasor liable for a percentage of the judgment equal to the percentage of negligence attributed to him by the trier of fact. This is the clear import of that portion of the Comparative Negligence Act which mandates that the jury find the percentage of negligence allocable to each party. See N.J.S.A. 2A:15-5.2, Theobald v. Angelos, 44 N.J. 228 (1965).
*522 The Comparative Negligence Act applies to this trial even though the settlement reached by Surrett with plaintiff bars a claim by Antonios for contribution against Surrett. Cf. Tefft v. Tefft, 192 N.J. Super. 561 (App.Div. 1983). In this situation, the jury must allocate liability between Surrett and Antonios even though Surrett, as a settling tortfeasor, cannot be affected by the jury's verdict. Cf. Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 569 (1980); Tefft v. Tefft, 192 N.J. Super. at 565-67; see also Rogers v. Spady, 147 N.J. Super. 274, 277 (App.Div. 1977).
The reason for submitting the question of Surrett's negligence to the jury is that if Antonios had been found causally negligent he would have been required to pay "... the total verdict less that attributable to the settling defendants' percentage share." Cartel Capital Corp., v. Fireco of N.J., 81 N.J. at 569. A non-settling tortfeasor against whom a verdict is rendered is entitled to an offset of an amount equal to the settling tortfeasor's proportionate share of liability. Id.; Rogers v. Spady, 147 N.J. Super. at 278. Expressed another way, a non-settling joint tortfeasor will be liable to a plaintiff only for that percentage of negligence attributable to him. Thus, even though a non-settling codefendant does not have a viable cross-claim against a settling tortfeasor, he should endeavor to prove the negligence of the settling codefendant in order to minimize the percentage of negligence for which the jury may find him responsible.[5]
The same reasons for giving an ultimate outcome charge in a negligence trial in which the plaintiff and one or more defendants may be found negligent require a similar charge where the plaintiff is not negligent as a matter of law but two or more codefendants may be. In the former instance, the jury is entitled to know that a plaintiff will not recover if his *523 allocable share of liability is 50% or more, and that any award granted him will be reduced by an amount equal to the percentage of his own negligence. N.J.S.A. 2A:15-5.1. In a situation like this one, telling the jury that any damages awarded to the plaintiff will be molded to reflect only that percentage of liability which the jury attributes to the non-settling defendant, will enable the jury to better fulfill its fact-finding function. The jury should have such an instruction so that its deliberations on the percentage of negligence allocable to the defendants will not take place in a vacuum or be based on a faulty understanding of the effect of the settlement.[6]
Since this trial presented relatively simple issues and involved few parties, there was no reason to apply the Roman exception. The jury was properly instructed about the effect on plaintiff's recovery of the allocation of fault in this type of trial. See Roman v. Mitchell, 82 N.J. at 345 (1980).
NOTES
[1] Suggested forms of ultimate outcome instruction to cover various factual situations are found in the Model Jury Charges, (Civil), § 8.25. These model charges do not carry an official court imprimatur. The precise language of every jury instruction must be tailored by the trial judge to fit the particular fact situation and the applicable statutory or decisional law.
[2] The Supreme Court observed in Roman that an exception to the rule applies "... in a complex case involving multiple issues and numerous parties ..." and under these circumstances, "the trial court, in the exercise of sound discretion, could withhold the instruction if it would tend to mislead or confuse the jury." 82 N.J. at 346-47. On occasion, the failure to give an ultimate outcome charge may be regarded as harmless error. See e.g., Vartenissian v. Food Haulers, Inc., 193 N.J. Super. 603 (App.Div. 1984).
[3] Her husband sues per quod.
[4] This situation was not one of the few where the negligence of a driver can be attributed to the passenger. See, e.g., Jacobson v. Bentley Morrison Corp., 103 N.J.L. 16 (Sup.Ct. 1926); Benning v. Herbert, 107 N.J.L. 97 (E. & A. 1930).
[5] Conversely, a plaintiff's purposes are served at trial by seeking to establish the causal fault of the non-settling codefendant(s).
[6] In Ramos v. Browning Ferris Industries of South Jersey, Inc., 194 N.J. Super. 96, 106 (App.Div. 1984), Judge Brody expressed the opinion of an unanimous panel that ... "a truer verdict is more likely to be returned where the fact-finder's attention is ultimately fixed on the conduct of the parties who will be affected by the verdict."