211 N.J. Super. 253 (1986)
511 A.2d 721
REYNALDO DE LOS SANTOS, ADMINISTRATOR AD PROSEQUENDUM AND GENERAL ADMINISTRATOR OF THE ESTATE OF ARLENE DE LOS SANTOS, REYNALDO DE LOS SANTOS, INDIVIDUALLY AND RAMONA DE LOS SANTOS, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
SADDLEHILL, INC., A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY; WILLIAM KOESTNER, IND. AND T/A SADDLEHILL, INC.; ANTHONY CORP. AND ANTHONY IAFELICE, IND. AND ANTHONY IAFELICE, T/A ANTHONY CORPORATION, JOHN CAPOBIANCO AND ELEVATOR MAINTENANCE, INC.; AND NEW JERSEY ELEVATOR GATE & DOOR, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1986.
Decided June 25, 1986.
*257 Before Judges FRITZ, BRODY and BAIME.
Harold J. Cassidy argued the cause for appellants (Cassidy, Despo, Foss & San Filippo, attorneys; Harold J. Cassidy and Randolph H. Wolf, on the brief).
Gerald Kaplan argued the cause for respondents Saddlehill, Inc., William Koestner, Ind. and T/A Saddlehill, Inc.; Anthony Corp. and Anthony Iafelice, Ind. and Anthony Iafelice, T/A Anthony Corporation (Lieb, Berlin & Kaplan, attorneys; Gerald Kaplan, of counsel and on the brief).
Stephen A. Geffner argued the cause for respondents John Capobianco and Elevator Maintenance, Inc. (Gallo, Geffner, Fenster, Farrell & Turitz, attorneys; Stephen A. Geffner, of counsel and on the brief).
Brief on behalf of respondent New Jersey Elevator Gate & Door, Inc., was suppressed.
The opinion of the Court was delivered by BAIME, J.A.D.
Plaintiffs instituted this action to recover damages for the death of their five-year old daughter who was crushed in the elevator of the apartment building in which they resided. The 46 count complaint included wrongful death and survival actions as well as individual claims for infliction of emotional *258 distress. Named as defendants were Saddlehill, Inc., the owner of the building, and its president, William Koestner, Anthony Corp., the managing agent, and its president, Anthony Iafelice, Elevator Maintenance Inc., an independent contractor, and its president, John Copabianco, and New Jersey Elevator Gate & Door, Inc., a subcontractor.
In the complaint, defendants Saddlehill, Koestner, Anthony Corp. and Iafelice were charged with failing to properly maintain the elevator in a safe condition. Plaintiffs also alleged that Elevator Maintenance and Copabianco negligently replaced the elevator door and failed to install a safety device referred to as a "toe guard" which would have prevented the elevator from moving while the door was open. Plaintiffs further claimed that New Jersey Elevator, the party that actually installed the door, was equally negligent in failing to install the toe guard. Plaintiffs sought both compensatory and punitive damages.
All of the defendants filed answers and cross claims for contribution. Prior to trial, plaintiffs' claim for punitive damages was dismissed. The trial judge additionally dismissed their individual actions for negligent infliction of emotional distress. Plaintiffs settled their claims against Elevator Maintenance, Copabianco and New Jersey Elevator for $100,000 before the jury was selected.
Following a protracted trial, the jury rendered its verdict. In a special interrogatory, the jury determined that Saddlehill and Koestner were not guilty of "separate and independent active negligence." However, the jury apportioned fault in the following manner: 5% for Saddlehill and Koestner, 5% for Anthony Corp. and Iafalice and 90% for Elevator Maintenance, Copabianco and New Jersey Elevator. The jury awarded $15,000 in damages in the survival action. However, the jury found no pecuniary damages in the wrongful death action. Based upon the percentages of negligence determined by the jury, the trial judge molded the verdict and entered a judgment against Saddlehill *259 and Koestner in the sum of $750 and against Anthony Corp. and Iafelice in the same amount. This appeal followed.
Despite the voluminous record, the essential facts are not in dispute. The genesis of this action was a tragic accident which occurred at approximately 8:30 p.m. on July 6, 1981. Plaintiffs' decedent was crushed by an elevator in her North Bergen apartment building. Apparently, she had attempted to enter the elevator in the basement of the complex. The accident was attributable to the absence of a "toe guard," a safety device designed to prevent the elevator from moving while its doors were open.
There were no witnesses to the incident, but the investigation of the police confirmed that the decedent became wedged between the outer door of the elevator and the cabin's inner gate, a space approximately eight inches wide. It would appear that someone on an upper floor summoned the elevator before the decedent could enter the inner door, and the outer gate closed behind her. She was then pulled up the elevator shaft until her head met the upper floor. In a matter of seconds, the decedent's head was crushed, and her badly battered body fell into the well of the shaft where it was discovered later that evening.
Elevator Maintenance had a service contract with Koestner which had been in force since 1970. One of the duties of Elevator Maintenance was to inspect the building's elevator on a periodic basis. On August 8, 1980 Koestner received a memorandum advising him that the elevator door and frame in the basement were "beyond repair." Several months later, Koestner directed Elevator Maintenance to replace the door and perform the necessary services. A contract was signed on November 5, 1980.
New Jersey Elevator, a subcontractor, installed a new outer door in early December, 1980. The old wooden door had been equipped with a toe guard. However, the subcontractor unaccountably failed to replace it. Although the superintendent of *260 the building was aware of this fact, he attached no significance to the absence of a toe guard because he was uncertain as to its function. Similarly, Iafelice inspected the elevator following installation of the new door, but he too was unaware of the need for a toe guard. A repair supervisor employed by Elevator Maintenance also inspected the door and found nothing amiss.
Defendants' expert, a licensed engineer, testified that "spacer plates"  his phrase for toe guards  are "in common use" in the industry. He further stated that well accepted safety standards mandated installation of such a device. He concluded that the failure of Elevator Maintenance to install one on the basement floor "constitute[d] a violation" of those safety standards.
Much of the evidence presented at trial pertained to the question of damages. Consistent with our Supreme Court's decision in Green v. Bittner, 85 N.J. 1, 12-17 (1980), plaintiffs were accorded broad latitude in presenting evidence concerning the pecuniary value of the loss of decedent's companionship and advice. In addition, plaintiffs presented two experts, Dr. M. Geraldine Gage, a professor of family economics at the University of Minnesota, and David Budin, an actuarial consultant, who testified that there was a likelihood of increasing "economic transfers" from child to parents with the passage of time.
As noted previously, the jury apparently found all of the parties negligent but ascribed most of the fault to Elevator Maintenance and New Jersey Elevator. The jury awarded no damages in the wrongful death action. In the survival action, the jury awarded $15,000 in damages. The judge molded the verdict to reflect a reduction of the damages based upon the percentage of negligence ascribed to the settling tortfeasors, Elevator Maintenance and New Jersey Elevator. This appeal followed.
Plaintiffs advance a plethora of arguments in their effort to obtain a reversal and a new trial. Although phrased in a *261 variety of ways, their complaints fall into six general categories. These include arguments that: (1) the judge's pretrial orders dismissing their claim for punitive damages and their individual actions for negligent infliction of emotional distress constituted reversible error, (2) the judge's evidentiary decisions were erroneous, (3) defense counsel's conduct deprived plaintiffs of their right to a fair trial, (4) the judge's instructions were misleading and failed to apprise the jury of the applicable principles of law, (5) the damages awarded by the jury should not have been reduced by the percentage of negligence ascribed to the settling tortfeasors and (6) the failure of the jury to award damages in the wrongful death action constituted a miscarriage of justice. Only the last two contentions require extended comment.

I
We first address plaintiffs' argument that Elevator Maintenance and New Jersey Elevator were not joint tortfeasors and that the trial judge incorrectly reduced the damages awarded by the jury in accordance with the percentage of negligence attributable to them. Although ambiguously phrased, the principal thrust of plaintiffs' claim is that defendants owed a nondelegable duty to maintain the elevator in a safe condition and, therefore, the negligence of the independent contractor and subcontractor must be imputed to them. They, thus, contend that the trial judge erroneously reduced the damages awarded by the jury by the percentage of negligence ascribed to Elevator Maintenance and New Jersey Elevator.
We start with the thesis that an owner of a building has a nondelegable duty to exercise reasonable care for the safety of tenants and persons using the premises at his invitation. Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 555 (1962); Gill v. Krassner, 11 N.J. Super. 10, 15 (App.Div. 1950); Levine v. Bochiaro, 137 N.J.L. 215, 219 (E. & A. 1948); Hussey v. Long Dock R.R. Co., 100 N.J.L. 380, 384 (E. & A. 1924). See also *262 Prosser & Keeton, Torts, § 63 at 445-446 (5 ed. 1984); 2 Harper & James, Law of Torts, § 26.11 at 1406-1408 (1956). A landlord who leases portions of his building is obliged to exercise reasonable care in the maintenance of common facilities under his control, to the end that the premises will be reasonably safe and fit for the uses which he has invited others to make of them. Levine v. Bochiaro, supra, 137 N.J.L. at 218. That duty is nondelegable. The owner may not relieve himself of that responsibility by his unilateral act of engaging an independent contractor to discharge it for him. In other words, "the lessor's duty to exercise due care in the maintenance of a common facility remains with him whether [he] chooses to discharge [it] himself, or by his employee, or by a third party who, as to the landlord, may have the status of an independent contractor." Id. at 219. See also Mayer v. Fairlawn Jewish Center, supra, 38 N.J. at 555; Gill v. Krassner, supra, 11 N.J. Super. at 15.
These principles have their genesis in our early common law and are presently codified in N.J.A.C. 5:10-4.1. That regulation, adopted pursuant to the Hotel and Multiple Dwelling Law (N.J.S.A. 55:13A-1 et seq.), states that "[o]wners, including agents ..., managing agents and superintendents shall have the general duties outlined herein" and that no "such person [shall] be relieved of any responsibility by the terms or provisions of any lease, contract or agreement." This regulation is augmented by N.J.A.C. 5:10-12.1 to 12.4 which provide detailed standards of safety pertaining to the maintenance of common elevators. As noted by our Supreme Court in Trentacost v. Brussel, 82 N.J. 214, 230 (1980), these regulations provide minimum standards for safety and habitability in multiple dwellings and have the "force of law."
These principles are entirely reasonable and are based upon important policy considerations. The party to whom the lessor owes a nondelegable duty ought not to be required to concern himself with contracts made by the owner for the discharge of his responsibility. Levine v. Bochiaro, supra, 137 N.J.L. at *263 219. The lessor may secure indemnity by either agreement with the contractor or the pursuit of such remedies as the law may afford, including common law indemnification.[1]Id. at 219-220. See Mayer v. Fairlawn Jewish Center, supra, 38 N.J. at 555-556. However, the landlord cannot relieve himself of responsibility for injuries negligently inflicted upon third persons as a result of the act or omission of an independent contractor hired by him to perform his nondelegable duty.
Plaintiffs are, thus, correct in their assertion that defendants were vicariously liable for the negligent acts of the settling tortfeasors. However, even if the landlord's liability were wholly vicarious  and based on the jury's verdict we are convinced that it was not  plaintiffs could derive no comfort from that fact. The fact remains that plaintiffs settled their claim against the independent contractor and subcontractor. While we agree that this settlement did not serve to extinguish their cause of action against defendants, Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 559 (1980); Daily v. Somberg, 28 N.J. 372, 383 (1958); McFadden v. Turner, 159 N.J. Super. 360, 366 (App.Div. 1978); Rossum v. Jones, 97 N.J. Super. 382, 390 (App.Div. 1967), it is nonetheless equally true that the settlement cannot be wholly ignored. Our cases have long recognized that a plaintiff's settlement with one tortfeasor has consequences on claims against another tortfeasor, Theobald v. Kenney's Suburban House, Inc., 48 N.J. 203, 206-209, 212 (1966); Theobald v. Angelos, 44 N.J. 228, 235 (1965), and this is true even though the latter's liability is solely vicarious. Cf. McFadden v. Turner, supra, 159 N.J. Super. at 364-365; Moss v. Jones, 93 N.J. Super. 179, 184 (App.Div. 1966). Where an individual's liability is soley vicarious, a plaintiff is entitled to only one satisfaction for the same loss and, thus, damages for which the nonsettling defendant is ultimately responsible *264 must be reduced pro tanto by the amount obtained from any settlement previously entered into between the injured party and the person who actually committed the negligent act. Cf. Restatement, Torts 2d, § 885(3) at 333, 335 (1977); Restatement, Judgments 2d, § 50 at 40-42 (1980); Prosser & Keeton, supra, § 48 at 330-332; 2 Harper & James, supra, § 10.1 at 714; Restatement, Contracts 2d, §§ 293, 294(3), 295(3) at 421, 423, 427 (1977). Hence, if the defendants' responsibility for the decedent's death were found to rest solely upon the theory of vicarious liability, they would be entitled to reduce the damages awarded by the jury against them by the amount of the settlement.
Conversely, if defendants' liability were predicated on acts of independent negligence, as we believe the jury found, the Comparative Negligence Act (N.J.S.A. 2A:15-5.1 et seq.) would come into play.[2] Enactment of that statutory scheme dramatically altered prior decisional law which held that a settlement with one of several joint tortfeasors resulted in a pro rata reduction in the verdict against the remaining tortfeasors. Theobold v. Angelos, supra, 44 N.J. at 241. N.J.S.A. 2A:15-5.2 now provides:
In all negligence actions in which the question of liability is in dispute, the trier of fact shall make the following as findings of fact:
a. The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence, that is, the full value of the injured party's damages;

*265 b. The extent, in the form of a percentage, of each parties' negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all the parties to a suit shall be 100%.
c. The judge shall mold the judgment from the finding of fact made by the trier of fact.
N.J.S.A. 2A:15-5.3 reads as follows:
The party so recovering, may recover the full amount of the molded verdict from any party against whom such recovering party is not barred from recovery. Any party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors.
Presently, each tortfeasor is ultimately liable for the same percentage of the judgment as the degree of negligence attributed to him. As we pointed out in Rogers v. Spady, 147 N.J. Super. 274, 277 (App.Div. 1977), "[a] natural corollary to this is that when a claimant settles with a codefendant, that percentage of negligence found attributable [to him] ... will be deducted from the verdict returned against the other codefendants found liable, i.e., the remaining joint tortfeasors will be liable for that percentage of negligence attributable to them." See also Ramos v. Browning Ferris Ind. of So. Jersey, Inc., 194 N.J. Super. 96, 106 (App.Div. 1984), certif. granted 101 N.J. 211 (1985). Cf. Lee's Hawaiian Islanders, Inc. v. Safety First Prod., 195 N.J. Super. 493, 506 (App.Div. 1984), certif. den. 99 N.J. 205 (1984). Stated another way:
Now the effect on the plaintiff of a joint tortfeasor's settlement will depend upon the percentage of fault found against him. When one defendant settles, the remaining codefendant or codefendants are chargeable with the total verdict less that attributable to the settling defendant's percentage share. [Cartel Capital Corp. v. Fireco of New Jersey, supra, 81 N.J. at 569.]
It is against this backdrop that we must consider plaintiffs' argument. Unfortunately, the verdict returned by the jury is not altogether clear. As we mentioned previously, in response to a special interrogatory, the jury found that defendants were not guilty of "separate and independent active negligence separate from any negligence of [the settling tortfeasors]." However, the jury also determined that defendants were 10% negligent and the settling tortfeasors were 90% negligent. Although the verdict is ambiguous, we construe it *266 as a determination that defendants were partially at fault. Our interpretation of the jury's verdict comports with the instructions given by the trial judge. In our view, the jury found that defendants were not guilty of "separate and independent active negligence" because they did not themselves actively and affirmatively install the defective elevator door. Rather, their negligence was essentially passive in that, according to the jury, they either knew or should have been aware of the settling tortfeasors' failure to install a toe guard. The jury determined that defendants were independently negligent on that account. Since they were adjudged jointly negligent, the Comparative Negligence Act was fully applicable and the judge correctly reduced the damages in accordance with the percentage of fault ascribed to the settling tortfeasors.

II
We next consider plaintiffs' argument that the jury's verdict awarding no damages in the wrongful death action constituted a miscarriage of justice. Although we are mindful of our Supreme Court's admonition in Green v. Bittner, supra, 85 N.J. at 4, that such a verdict "should ordinarily be set aside ... and a new trial ordered," our thorough review of the record here convinces us that the jury's determination should be sustained.
Our Supreme Court has repeatedly cautioned trial judges "to resist the natural temptation to substitute their judgment for that of the jury." Baxter v. Fairmont Food Co., 74 N.J. 588, 597 (1977). The judge does not sit as a "thirteenth and decisive juror." Dolson v. Anastasia, 55 N.J. 2, 6 (1969). A jury's verdict "is entitled to very considerable respect" and should be overturned only "upon the basis of a carefully reasoned and factually supported (and articulated) determination ... that the continued viability of the judgment would constitute a manifest denial of justice." Baxter v. Fairmont Food Co., supra, 74 N.J. at 597-598.
*267 The deference accorded a jury's verdict has "roots deep in the common law." Id. at 598. As expressed by Chief Justice Hughes, "the presumption of correctness of a verdict by a jury has behind it the wisdom of centuries of common law merged into our constitutional framework." Ibid. That is not to say that a jury's verdict is sacred. When a court undertakes to review it, however, the task must "be approached, in all contingencies, with utmost circumspection...." Ibid.
Here, we are fortunate to have the benefit of the trial judge's reasons for denying a new trial on damages. His views are expressed in great detail in an extensive letter opinion. In that opinion, the judge provided his evaluation of the "witness[es'] credibility," their "demeanor" and his "feel of the case"  factors which may not be reflected in the printed word of the written record. See Dolson v. Anastasia, supra, 55 N.J. at 7. We emphasize that his opinion confirms what our independent and thorough review of the record discloses. The simple fact is that the evidence presented by plaintiffs with regard to damages was wholly unpersuasive. The testimony of plaintiffs' experts was highly speculative and conjectural, as they themselves admitted on cross-examination.
We are fully convinced from our careful reading of the record that plaintiffs received a fair trial. We perceive no justifiable basis to disturb the jury's determination and afford plaintiffs another opportunity to litigate the issue of damages.

III
We have carefully reviewed plaintiffs' remaining arguments in light of the voluminous record and are convinced that they are devoid of merit. We are entirely satisfied that the judge correctly dismissed plaintiffs' claim for punitive damages and their individual actions for negligent infliction of emotional distress. In that respect, we are in complete accord with the trial judge's determination that there was no justifiable basis to warrant a punitive award. Nappe v. Anschelewitz, *268 Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984). It cannot fairly be said that defendants' conduct was sufficiently egregious to justify punitive damages. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454 (1977); Berg v. Reaction Motors Div., 37 N.J. 396, 414 (1962). We are also in complete agreement with the trial judge's conclusion that plaintiffs' individual actions for negligent infliction of emotional distress did not satisfy the standards adopted by our Supreme Court in Portee v. Jaffee, 84 N.J. 88, 101 (1980). It is undisputed that a critical element  "observation of the death or injury at the scene of the accident"  is not present here. Ibid.
Equally unpersuasive is plaintiffs' attack upon the trial judge's evidentiary decisions. We need not address all of the arguments separately. We merely repeat that plaintiffs were accorded extremely broad latitude in presenting evidence relating to their loss of the decedent's advice and companionship. The minimal restrictions placed upon the presentation of such evidence clearly fell within the trial judge's broad discretionary authority. State v. Carter, 91 N.J. 86, 106 (1982); State v. Sands, 76 N.J. 127, 144 (1978); Evid.R. 4. We also reject plaintiffs' arguments that defendants' expert was unqualified, Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950); Spiegle v. Seaman, 160 N.J. Super. 471, 478 (App.Div. 1978); Evid.R. 19, that his conclusions constituted a "net opinion," Johnson v. Salem Corp., 97 N.J. 78, 91 (1984); Buckelew v. Grossbard, 87 N.J. 512, 524 (1981); Parker v. Goldstein, 78 N.J. Super. 472, 484 (App.Div. 1963), certif. den. 40 N.J. 225 (1963) and that his opinion impermissibly embraced the "ultimate issue" to be resolved by the jury. State v. Boiardo, 111 N.J. Super. 219, 238 (App.Div. 1970), certif. den. 57 N.J. 130 (1970), cert. den. 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (1971); Evid.R. 56(3).
We next consider plaintiffs' contention that defense counsel's conduct impaired their right to a fair trial. At the outset, we note that both counsel were unnecessarily acrimonious *269 and equally at fault. The trial judge exercised admirable restraint and patience in dealing with their petty bickering. Of course, we recognize that in the pressurized atmosphere that develops in a courtroom during an extended trial, counsel may find it increasingly difficult to submit to an unfavorable ruling. Fierce argument between the attorneys often creates the motivation to add a few final words even after the judge has rendered a definitive decision. The controlling principle is clear. We emphasize that it is incumbent upon counsel to put aside their disappointment and save the point in issue for appellate review. We find it necessary to stress this rule because the record is replete with instances in which it was transgressed by both counsel. Our thorough review of the record convinces us, however, that plaintiffs were not denied a fair trial on that account. Many of the acrimonious colloquies referred to in plaintiffs' brief occurred out of the presence of the jury. In any event, we are entirely satisfied that the attorneys' often improper conduct had no impact upon the jury's determinations.
We also reject plaintiffs' argument that the trial judge's instructions were misleading and failed to apprise the jury of the applicable legal principles. Contrary to plaintiffs' assertions, it was not incumbent upon the judge to instruct the jury with regard to the defendants' respective responsibilities under the elevator maintenance and repair contracts. As the judge aptly observed, the contents of the contracts had no bearing on the independent contractor's duty in tort. Elevator Maintenance and New Jersey Elevator, under well-established principles, had "a duty to persons, other than the one with whom [they had] made the contract, to carry out [the] undertaken work in a careful and prudent manner...." Aronsohn v. Mandara, 98 N.J. 92, 105 (1984). Failing that, a jury could find them "responsible to third persons for their personal injuries ... proximately caused by [their] failure to exercise that care ... irrespective of privity." Ibid.
*270 We also conclude that the trial judge did not commit error in refusing to advise the jury of the effect of its comparative negligence findings upon the damages actually awarded. An "ultimate outcome" charge is generally required when a plaintiff and one or more defendants are comparatively negligent. Roman v. Mitchell, 82 N.J. 336, 345 (1980). Otherwise, the jury might erroneously conclude that the plaintiff will recover damages notwithstanding its finding that his negligence was greater than the combined fault of the defendants. In such a case, the jury "should be given an ultimate outcome charge so that its deliberations on percentages of negligence will not be had in a vacuum, or possibly based on a mistaken notion of how the statute operates." Ibid. Cf. O'Brien v. Bethlehem Steel Corp., 59 N.J. 114, 124 (1971). Here, there was no issue of the decedent's negligence. Therefore, there was no affirmative claim that would have justified the ultimate outcome charge, and we perceive no authorization or direction in Roman v. Mitchell, supra, compelling that course. See Colucci by Colucci v. Thomas Nicol Asphalt Co., 194 N.J. Super. 510, 518 (App.Div. 1984). Contra Dimogerondakis v. Dimogerondakis, 197 N.J. Super. 518, 522-523 (Law Div. 1984). Even assuming, however, that such a charge should ordinarily be given in a case involving a settling tortfeasor, it is abundantly clear that a trial judge "in the exercise of sound discretion, [can] withhold the instruction if it would tend to mislead or confuse the jury." Roman v. Mitchell, supra, 82 N.J. at 346-347. The jurors here endured a lengthy trial, and it is apparent from the record that the judge was striving to avoid unnecessary confusion. He repeatedly emphasized that it was the jury's duty to award full damages sufficient to completely recompense plaintiffs for their pecuniary loss. We discern no justifiable basis to disturb his discretionary decision under these circumstances.
We further find that the judge properly refused to instruct the jury concerning the landlord's duty to provide adequate security. The evidence proffered by plaintiffs in that *271 respect was highly speculative. We discern no error in the trial judge's refusal to submit the issue to the jury.
Lastly, we find that the trial judge's instructions with respect to damages in the wrongful death action fully comported with the principles enunciated in Green v. Bittner, supra. Again, we need not address each of plaintiffs' separate contentions in that respect. Suffice it to say, the judge's instructions, read in their entirety, adequately apprised the jury of the applicable principles of law. We perceive no error in that regard.

IV
Accordingly, the judgment of the Law Division is affirmed in all respects.
NOTES
[1] N.J.S.A. 2A:40A-1, which became effective following the decedent's death, limits the effectiveness of such indemnification agreements.
[2] The Comparative Negligence Act is applicable where there are joint tortfeasors. Clearly, the Act does not apply where the liability of one of the defendants is solely vicarious. Although the term "joint tortfeasor" is not defined in the Comparative Negligence Act, it should be construed in light of the definition provided in the Joint Tortfeasors Contribution Law. Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471, 485 (Law Div. 1977). We note in that regard that the Contribution Law states generally that where a party's liability is solely vicarious, he and the actively negligent tortfeasor "shall be considered a single tortfeasor." N.J.S.A. 2A:53A-1. Cf. Public Service Elec. and Gas Co. v. Waldroup, 38 N.J. Super. 419, 431-432 (App.Div. 1955); Marley v. Palmyra, 193 N.J. Super. 271, 298 (Law Div. 1983).