248 N.J. Super. 134 (1991)
590 A.2d 681
ALBERT E. SULLIVAN AND PATRICIA SULLIVAN, HIS WIFE, PLAINTIFFS-APPELLANTS/CROSS-RESPONDENTS,
v.
COMBUSTION ENGINEERING; G.A.F. CORP., SUCCESSOR TO RUBBEROID CO.; GARLOCK, INC.; ARMSTRONG WORLD INDUSTRIES, INC.; EAGLE PICHER INDUSTRIES; OWENS CORNING FIBERGLASS CORP.; KEENE CORP., SUCCESSOR TO BALDWIN-EHRET-HILL, INC.; BABCOCK & WILCOX CO.; CHARLES F. GUYON; QUIGLEY; PITTSBURGH CORNING CORP., IN ITSELF AND AS SUCCESSOR TO UNARCO; PORTER HAYDEN CO.; PACOR A/K/A PHILADELPHIA ASBESTOS CORP.; J.H. FRANCE REFRACTORIES CO.; LYNDHURST METALS CORP.; PREVIOUSLY QC CORP.; B & D MANUFACTURING CO.; HOLMES INSULATION LIMITED; CELOTEX CORP.; IN ITSELF AND AS SUCCESSOR TO PHILIP CAREY MFG. CO.; FLINTKOTE CO.; RAYMARK INDUSTRIES, INC., SUCCESSOR TO RAYBESTOS-MANHATTAN; DELAWARE INSULATION COMPANY; DRESSER INDUSTRIES, INC.; FLEXITALLIC GASKET COMPANY; ROCK WOOL MANUFACTURING COMPANY; H.K. PORTER COMPANY, INC.; ATLAS TEXTILES; NICOLET INDUSTRIES, INC., IN ITSELF AND AS SUCCESSOR TO KEASBEY & MATTISON COMPANY; INDUSTRIAL SUPPLIES COMPANY; ANCHOR PACKING; E-Z CO.; J.W. ROBERTS LTD., A DIVISION OF TURNER & NEWALL, LTD.; ACANDS, INC.; JOHN DOE, INDIVIDUALLY AND AS A CORPORATION (FICTITIOUS NAME), DEFENDANTS, AND OWENS ILLINOIS, INC., AND FIBREBOARD CORPORATION, DEFENDANTS-RESPONDENTS/CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1991.
Decided May 8, 1991.
*137 Before Judges ANTELL, O'BRIEN and SCALERA.
Joshua M. Spielberg argued the cause for appellants/cross-respondents (Tomar, Simonoff, Adourian & O'Brien, attorneys; Joshua M. Spielberg on the brief; Joshua M. Spielberg and Patrice A. Gillotti, on the reply brief).
Andrew Berry argued the cause for respondents/cross-appellants (McCarter & English, attorneys; Michael A. Tanenbaum, of counsel; John C. Garde and Rosanne C. Kemmet, on the brief; John C. Garde, Rosanne C. Kemmet and Lynda Calderone, on the reply brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
This personal injury suit was brought by Albert E. Sullivan (plaintiff) and Patricia Sullivan, his wife, against various manufacturers and distributors of certain asbestos products to which plaintiff was exposed for a period of 33 years during the course *138 of his employment. As a result of his exposure plaintiff developed thickening of the pleural lining of his lungs, an asbestos-related disease. The trial court dismissed his claim for present physical injury on the ground that the condition entails no loss of pulmonary function and because it is causing plaintiff no discomfort.
Dr. Donald Auerbach, plaintiff's medical expert, testified that, in 1981, plaintiff's chest x-rays first revealed the presence of asbestos-related pleural disease. He also stated that the scarring and thickening was permanent and its effect is to make the lining of the lungs "very hard.... [I]t can be just like shoe leather." Based on x-rays from 1981 to 1989 Dr. Auerbach noted that plaintiff's disease "has progressed," and "will progress." However, he indicated that symptoms such as breathing impairment, shortness of breath and coughing are only possible with extensive pleural scarring or thickening, that plaintiff's scarring is not extensive and that he is at present symptom-free. He acknowledged also that pleural thickening is the least serious of the asbestos-related diseases.
On the plaintiff's medical evidence the trial court dismissed plaintiff's claim of a present physical injury for the reason that "except for emotional damages and future damages for medical [surveillance] examinations" there could be no claim for damages arising from plaintiff's asbestos-related pleural disease.
The jury found against plaintiff on his claim for emotional distress and for punitive damages, but awarded him $2,255 for the anticipated cost of future medical surveillance. The principal point of plaintiff's appeal is that the trial court erred in dismissing his damage claim for present physical injury.
According to Restatement (Second) of Torts § 905, Comment b at 456 (1977), compensatory damages that may be awarded without proof of pecuniary loss include compensation for "bodily harm," which is defined as "any impairment of the physical condition of the body, including illness or physical pain." Thus, compensatory damages can be awarded for bodily *139 harm, "although there is no impairment of a bodily function and, in some situations, even though the defendant's act is beneficial." Id.
Herber v. Johns-Manville Corp., 785 F.2d 79 (3d Cir.1986), and Mauro v. Owens-Corning Fiberglas, 225 N.J. Super. 196, 542 A.2d 16 (App.Div. 1988), aff'd, sub nom Mauro v. Raymark Industries, 116 N.J. 126, 561 A.2d 257 (1989), are instructive. In Herber, plaintiff was exposed to asbestos products during the course of his employment and was diagnosed as having asbestos-related pleural thickening. However, he had no symptoms such as coughing, wheezing or shortness of breath. Herber, supra, 785 F.2d at 88. Although the jury found that plaintiff's exposure to the asbestos fibers had caused pleural thickening, and that he had suffered a physical injury to his lungs, it decided that the sum of money that would fairly, reasonably, and adequately compensate him for his "injuries" was "none." Id. at 81. That determination was upheld on appeal, based upon the reviewing court's conclusion that the jury's determination was one which properly lay within its authority. Id. at 88-89.
In Mauro, too, plaintiff had suffered pleural thickening as a result of long-term exposure to asbestos. The jury awarded a total of $7,500 for his "claims of bodily injury, emotional distress, pain and suffering and medical surveillance." Mauro, supra, 225 N.J. Super. at 211, 542 A.2d 16. In its affirming decision, the Supreme Court observed that plaintiff's x-rays showed "scarring of the lung lining," and that "although the results of his physical examination and lung function test were `normal,' he had bilateral thickening of both chest walls and calcification of the diaphragm." Mauro v. Raymark Industries, Inc., supra, at 116 N.J. 129-30, 561 A.2d 257. As here, there were no "physical symptoms evidencing plaintiff's distress." Id. at 137, 561 A.2d 257. The Supreme Court also noted, without adverse comment, that the trial court "permitted the jury to consider Mauro's claim for damages caused by his present medical condition, as well as the cost of future medical *140 surveillance." Id. at 131, 561 A.2d 257 (emphasis added). It specifically stated that Mauro's "exposure to asbestos has resulted in physical injury." Id. at 137, 561 A.2d 257. Finally, the Court observed that "our case law affords toxic-tort plaintiffs the right to receive full compensation for any provable diminution of bodily health, accommodating all damage claims attributable to present injury...." Id. at 144, 561 A.2d 257 (emphasis added).
We distinguish Landrigan v. Celotex Corp., 243 N.J. Super. 449, 579 A.2d 1268 (App.Div. 1990). There, suit was brought on the claim that decedent's colon cancer had been caused by the asbestos products to which decedent had been exposed during his working lifetime. During the trial, decedent's surviving spouse asserted a claim for damages based upon decedent's pleural thickening, likewise said to be asbestos related. This court affirmed the trial court's dismissal of plaintiff's claim for the "minimal pleural thickening" that was first discovered during the trial when plaintiff's expert examined an x-ray of decedent's lungs. Id. at 463-64, 579 A.2d 1268. The opinion pointed out that decedent "was never made aware of its existence," and expressly invited comparison of that case with Mauro. Id. 243 N.J. Super. at 464, 579 A.2d 1268.
We conclude that the question of whether plaintiff's pleural thickening constitutes an injury and, if so, the extent of compensation to be awarded for the physical changes brought about in the lining of plaintiff's lungs, should properly have been left to the jury's determination. We believe our view coincides with those expressed or implied by other courts which have considered comparable cases. See Howell v. Celotex Corp., 904 F.2d 3, 5 (3d Cir.1990); Herber v. Johns-Manville Corp., 785 F.2d 79, 88-89 (3d Cir.1986); Giovanetti v. Johns-Manville Corp., 372 Pa.Super. 431, 539 A.2d 871, 876 (Pa.Super. 1988); but see In re Hawaii Federal Asbestos Cases, 734 F. Supp. 1563, 1567-68 (D.Hawaii 1990).
*141 In our view, Schweitzer v. Consolidated Rail Corp. (Conrail), 758 F.2d 936 (3d Cir.), cert. denied, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), and Burns v. Jaquays Min. Corp., 156 Ariz. 375, 752 P.2d 28 (App. 1987), appeal dismissed, 162 Ariz. 186, 781 P.2d 1373 (1989), are distinguishable from the case now before us based on material differences in the physical facts presented to those courts. Schweitzer involved claims asserted by railroad workers under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51-60 (1986). Plaintiffs' claims of injuries seem to have consisted of nothing more than that they suffered "exposure" to asbestos fibers during the course of their employment. The opinion does not speak of any physical changes allegedly induced by the exposure, and holds only that "mere exposure to asbestos" without "manifestation of injury" would not be recognized to support a cause of action. Schweitzer, supra, 758 F.2d at 942.
Burns, in applying the Schweitzer rationale, also focused on claims primarily grounded in exposure. They differed in degree from those considered in Schweitzer only in that, as the court stated, all the plaintiffs "have asbestos fibers in their lungs which are causing changes in the lung tissue." Burns, supra, 752 P.2d at 30. While the line dividing actual pleural thickening from lung tissue which is merely undergoing the process of change is a fine one, we conclude that the Schweitzer and Burns decisions signify a determination by those courts that the pathological impact of exposure had not progressed to the point of a "manifestation of injury" which is clearly present here.
Whether plaintiff's pleural thickening constitutes an injury and, if so, the damages to be awarded, is therefore remanded to the Law Division for retrial.
Plaintiff also argues that the trial court should have submitted to the jury his claim for "possible" future consequences of his asbestos-related pleural condition. New Jersey's long-standing rule is that "prospective damages are not recoverable *142 unless they are reasonably probable to occur." Mauro, supra, 116 N.J. at 133, 561 A.2d 257. "Moreover, there is no recovery allowed for the mere possible consequences of an injury inflicted by a tortfeasor." Lesniak v. County of Bergen, 117 N.J. 12, 20, 563 A.2d 795 (1989).[1]
Plaintiff makes the further point that the trial court should not have instructed the jury that in order for him to recover for emotional distress it must be shown that he is suffering from "serious" fear. The instruction given by the court accords with our holdings in Mauro, supra, 225 N.J. Super. at 208, 211, 542 A.2d 16 and Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 563, 495 A.2d 495 (Law Div. 1985). See also Advisory Com'n v. Diamond Shamrock, 243 N.J. Super. 170, 174-175, 578 A.2d 1248 (App.Div. 1990), where we stated that plaintiff's anxieties were not compensable in the absence of "serious mental illness" or emotional distress which is "severe and substantial."
Plaintiff's argument that the trial court erred in precluding the testimony of his medical expert witness is lacking in merit. Plaintiff failed to inform defendants that he planned to call Dr. Tobe as a witness until the eve of trial, notwithstanding that he had the doctor's report in his hands for more than three years. The failure to furnish timely the names of expert witnesses to be called at trial or their reports may, in the sound discretion of the trial court, result in the exclusion of their testimony. Westphal v. Guarino, 163 N.J. Super. 139, 145, 394 A.2d 377 (App.Div.), aff'd o.b., 78 N.J. 308, 394 A.2d 354 (1978); Brown v. Mortimer, 100 N.J. Super. 395, 401, 242 A.2d 36 (App.Div. 1968); see also R. 4:17-4(e); R. 4:17-7; R. 4:23-5(b). Nevertheless, although the court's ruling was faultless under the circumstances presented, in view of our determination to *143 remand the matter for retrial as to plaintiff's present physical injury, we also direct that the retrial include plaintiff's claim for emotional distress and that in connection therewith Dr. Tobe be permitted to testify. The trial court is authorized to make whatever provision it may deem necessary to allow defendants to meet Dr. Tobe's anticipated testimony.
Plaintiff challenges the jury instructions as to punitive damages on the claim that they wrongly informed the jury that "an act involving an actual intent to harm another is required before awarding punitive damages." We have examined the impugned language of the charge and conclude that it does not support plaintiff's interpretation. Although the court spoke of "an intentional wrongdoing in the sense of an evil-minded act or an act accompanied by a wanton and willful disregard of the rights of another," we find no implication therein, as defendants claim, that the jury must find as a requisite to the award of punitive damages an "actual intent to harm another."
On their cross-appeal defendants argue that the court erroneously prevented them from introducing certain answers to interrogatories from settling codefendants. The purpose of the offer was to enable the jury to allocate liability among all the defendants.
N.J.S.A. 2A:15-5.3e states: "Any party who is compelled to pay more than his percentage share may seek contribution from the other joint tortfeasors." (emphasis added). Under this statute,
[E]ach tortfeasor is liable for the same percentage of the judgment as the percentage of negligence found attributable to him. A natural corollary to this is that when a claimant settles with a codefendant, that percentage of negligence found attributable to the settling codefendant will be deducted from the verdict against the other codefendants found liable, i.e., the remaining joint tortfeasors will be liable for that percentage of negligence attributable to them.... [O]nly the percentage amount equal to the percentage of negligence attributable to the settling defendant is deducted, no matter what the size of the settlement.
*144 Rogers v. Spady, 147 N.J. Super. 274, 277-278, 371 A.2d 285 (App.Div. 1977) (emphasis added); see also Tefft v. Tefft, 192 N.J. Super. 561, 570, 471 A.2d 790 (App.Div. 1983); Dimogerondakis v. Dimogerondakis, 197 N.J. Super. 518, 521-522, 485 A.2d 338 (Law Div. 1984). Therefore, a nonsettling tortfeasor must "prove the negligence of the settling codefendant in order to minimize the percentage of negligence for which the jury may find him responsible." Dimogerondakis, supra, 197 N.J. Super. at 522, 485 A.2d 338.
Here, the trial judge correctly determined that the answers to interrogatories could not be relied upon for purposes of allocating liability because they furnished no basis from which an allocation of percentages could be made. As the court said, they fail to show "what part of the time plaintiff was exposed to which products...."
We reverse the trial court's dismissal of plaintiff's claim for damages resulting from the present state of his physical injury and emotional distress and remand for further proceedings consistent with this opinion. We affirm on the cross-appeal.
NOTES
[1] We leave for another day the question of whether plaintiff will be permitted to seek further damages in the future should symptoms develop or in the event that he experiences a more serious illness as the result of his exposure to asbestos. See Ayers v. Jackson Tp., 106 N.J. 557, 584, 525 A.2d 287 (1987).