708 A.2d 454

GARY LEVIN AND DONNA LEVIN, PLAINTIFFS–APPELLANTS, v. ADRIAN LYNN, DAVID B. MILLER, LORRAINE MILLER, FOX & LAZO REALTORS, INC., JAMES DOWNING, JOHN DOES, LATTER NAME BEING FICTITIOUS DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted February 18, 1998—Decided April 24, 1998.

178

Before Judges LONG, STERN and LESEMANN.

*George N. Polis*, attorney for appellants.

*Kelly, McLaughlin & Foster*, attorneys for respondents Fox & Lazo Realtors, Inc. and Adrian Lynn (*Thomas P. Bracaglia* and *Frank S. Nofar*, on the brief).

No other party participated in this appeal.

The opinion of the court was delivered by

LESEMANN, J.S.C. (temporarily assigned).

Plaintiffs appeal from a summary judgment dismissing their complaint against defendants seeking damages for an alleged unlawful entry and detainer in which, they claim, their personal property was removed from an apartment they occupied, was left exposed to the elements, and was severely damaged. Their

complaint sought damages against their landlords, defendants David B. Miller and Lorraine Miller (the Millers); against Fox & Lazo Realtors, Inc. (Fox & Lazo), the brokers who had originally rented the apartment to plaintiffs and who had also re-rented the apartment to a new tenant who allegedly actually removed plaintiffs' belongings; and against Adrian Lynn, (Lynn) an employee of Fox & Lazo, who had represented plaintiffs and the Millers in the transaction and who allegedly told the new tenants they were free to remove plaintiffs' belongings.

We are satisfied that plaintiffs demonstrated a *prima facie* case of unlawful actions by the defendants sufficient to withstand a motion for summary judgment and accordingly we reverse.[1]

The facts of the case, viewed as they must be in the light most favorable to plaintiffs, *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995), *Judson v. Peoples Trust Co. of Westfield*, 17 *N.J.* 67, 110 *A.*2d 24 (1954), can be set out briefly.

In 1991 plaintiffs leased from the Millers an apartment in Mays Landing known as 4832 Brecknock Court where they lived until 1994. In that year the Millers instituted a summary dispossess proceeding against plaintiffs for nonpayment of rent and in July 1994 they obtained a judgment for possession of the apartment. However, no warrant for possession issued and, at least initially, the parties seemed to be moving toward a relatively amicable termination of their relationship. Adrian Lynn, who had rented plaintiffs the apartment in 1991 now rented them another apartment within the same condominium complex, just a few doors away.[2]

---

[1] A complaint by the Millers against the Levins for unpaid rent had been consolidated with this action and, after dismissing Levins complaint against the Millers, the court tried the rent action and entered judgment in favor of the landlord. No appeal has been taken from that judgment. There were no cross-claims filed by or against any of the defendants.

[2] Lynn also lived within the same complex. The new unit rented by plaintiffs was not owned by the Millers but by an unrelated party for whom Fox & Lazo also served as brokers.

On or about August 2, 1994, Lynn began negotiating with James and Rochelle Downing as prospective tenants for the apartment being vacated by plaintiffs. The Downings signed an application to rent the apartment and on August 9 signed a form of lease and delivered a check for the first month's rent. Eventually that lease was signed by the Millers, but that apparently happened only on or about August 29. The commencement date of the lease was September 1, 1994.

During August 1994 plaintiffs began moving their belongings from their old apartment into their new dwelling. Some time before August 10 they began sleeping in their new residence while many of their belongings were still in the old unit. Almost simultaneously, the Downings began preparations to occupy 4832 Brecknock Court. On August 12 they signed a hand-printed addendum to their lease, apparently prepared by Lynn, listing certain repairs to be made by them and others to be made by the landlord.

On August 10, 1994, a number of articles belonging to plaintiffs and still in the premises at 4832 Brecknock Court were removed from the apartment, placed in the backyard, and so severely damaged by the elements as to be virtually destroyed. Plaintiffs claim they lost golf clubs and other equipment, suitcases and clothing, all of which had a value of several thousand dollars. There is no question that James Downing, either by himself or with assistance from his family, accomplished that removal and at the same time had the locks changed on the apartment.

Plaintiff's complaint named Downing as a defendant but he was apparently never served with summons and complaint.[3] Nevertheless, on the summary judgment motion the court was presented with a lengthy, somewhat rambling certification apparently pre-

---

[3] Plaintiffs say the Downings apparently vacated the subject premises about two or three months after they moved in and they have not appeared in this action. Neither plaintiff nor anyone else says anything further about attempts to serve the Downings or where they are now.

pared by James Downing.[4]   In it Downing describes a conversation with Lynn in which he says he asked her "about the things in the house."   He says that in response, "she said give Mr. Levin about three days if it is not out by then get rid of it because it did not belong to them anyway."   Later in that same certification Downing describes a conversation he says he had with Mrs. Levin in which she said that neither she nor her husband had any interest in any of the articles remaining in the house and in which (according to Downing) she acquiesced in his stated intention to put the remaining articles in the backyard.   Mrs. Levin denies making any such statement.

## I

The first count of plaintiffs' complaint is based on an alleged unlawful "entry and detainer."   The applicable statutes include *N.J.S.A.* 2A:39–1 and *N.J.S.A.* 2A:39–2, the relevant portions of which read as follows:

> *N.J.S.A.* 2A:39–1.   No person shall enter upon or into any real property ... and detain and hold the same, except where entry is given by law, and then only in a peaceable manner.   With regard to any real property occupied solely as a residence by the party in possession, such entry shall not be made in any manner without the consent of the party in possession unless the entry and detention is made pursuant to legal process as set out in *N.J.S.* 2A:18–53 et seq. or 2A:35–1 et seq.

> *N.J.S.A.* 2A:39–2.  · If any person shall enter upon or into any real property and detain or hold the same ... by putting out of doors, or carrying away the goods of the party in possession, ... such person shall be guilty of a forcible entry and detainer within the meaning of this chapter.   With regard to any real property occupied solely as a residence by the party in possession, if any person shall enter upon or into said property and detain or hold same in any manner without the consent of the party in possession unless the entry is made pursuant to legal process as set out in *N.J.S.* 2A:18–53 et seq. or 2A:35–1 et seq., such person shall be guilty of an unlawful entry and detainer within the meaning of this chapter.

In addition, *N.J.S.A.* 2A:39–8 provides that a plaintiff recovering judgment in an action for unlawful entry and detainer

---

[4] It is not clear which party presented the certification to the court.

shall recover all damages proximately caused by the unlawful entry and detainer including court costs and reasonable attorney's fees. When a return to possession would be an inappropriate remedy, treble damages shall be awarded in lieu thereof.

Both *N.J.S.A.* 2A:39–1 and *N.J.S.A.* 2A:39–2 were amended in 1971 to add the second sentence to each section. The references therein, to *N.J.S.A.* 2A:18–53 et seq. and *N.J.S.A.* 2A:39–2 et seq., are to the statutory provisions concerning, respectively, summary dispossess proceedings instituted in the Special Civil Part, and Superior Court actions to establish either title or the right to possession of real property, and the intent of those amendments is clearly to prohibit a landlord or anyone else from taking possession of residential premises without following judicial procedures. In the case of a summary dispossess proceeding (which is the method employed by the Millers to obtain a judgment of possession against plaintiffs here) that procedure includes the landlord's obtaining of a warrant for possession. *N.J.S.A.* 2A:18–57. And, it should be noted that in any action seeking possession of a residential property, the issuance of that warrant can be delayed, for good cause, for as long as six months:

[I]n any action brought by a landlord against a tenant to recover possession of premises or unit used for dwelling purposes, to which this act is applicable, whether by summary dispossess proceedings, civil action for the possession of land, or otherwise, the judge of the court having jurisdiction shall use sound discretion in the issuance of a warrant or writ for removal or writ of possession, and if it shall appear that by the issuance of the warrant or writ the tenant will suffer hardship because of the unavailability of other dwelling accommodations the judge may stay the issuance of the warrant or writ and cause the same to issue at such time as he shall deem proper under the circumstances, but in no case shall such judge stay the issuance of any such warrant or writ for possession for a longer period than 6 months after the date of entry of judgment of possession. . . .

[*N.J.S.A.* 2A:42–10.6.]

While some of the language of the unlawful entry and detainer statutes seems archaic, their applicability to the present case, at least as concerns the actions of James Downing, is clear. Downing entered the premises and by changing the locks did "hold the same" and did indeed put plaintiffs' belongings "out of doors" by "carrying away the goods of the party in possession." And he did all of that without either the consent of the plaintiffs or benefit of the legal process referred to in the statutes. Indeed,

defendants do not dispute that proposition except to argue that by the time plaintiffs' belongings were removed, they no longer resided at 4832 Brecknock Court. However, the undisputed fact is that on August 10, 1994 plaintiffs had not terminated their residency at the apartment they had occupied for some three years. That they were in a state of transition and had begun sleeping at their new apartment, does not preclude their still being residents at Number 4832. Bearing in mind the indulgent view to be taken of plaintiffs' factual contentions in evaluating a motion for summary judgment to dismiss their complaint, we must accept for present purposes that plaintiffs were still residents of 4832 Brecknock Court when their goods were unlawfully removed.

■ Defendants' principal argument for their non-liability rests on what we conceive to be an unrealistic reading of the cited statutes. They maintain that they cannot be guilty of violating those provisions since none of them physically entered the apartment and removed plaintiffs' belongings. They claim it is not sufficient for plaintiffs to show that defendants induced the unlawful entry and destruction by someone else, here James Downing. We are satisfied, however, that such a limited reading of the statute is artificial and contrary to the obvious purpose of the enactment. As Justice Cardozo said several years ago, albeit in a different context, "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman...." *Wood v. Lucy, Lady Duff Gordon,* 222 *N.Y.* 88, 118 *N.E.* 214 (1917).

■ With respect to Lynn, who is said to have told Downing to remove plaintiffs' belongings, liability is clear under plaintiffs' allegations. Certainly if Lynn had, herself, entered the apartment and physically removed and destroyed plaintiffs' property, she would be liable for the damages prescribed in the unlawful entry and detainer statutes. If she accomplishes that same result by telling someone else to perform the unlawful act, she has committed the same wrong and she is as fully responsible as if she had performed the physical activity herself. That is a basic principle

of agency law and there is no conceivable reason why one causing such a violation should escape responsibility here. The principle is set out clearly and concisely in the Restatement:

> A person is subject to liability for the consequences of another's conduct which results from his directions as he would be for his own personal conduct if, with knowledge of the conditions, he intends the conduct, or if he intends its consequences,....
>
> [*Restatement (Second) of Agency* § 212 (1958).]

Plaintiffs are correct in arguing that Lynn can no more escape responsibility for her actions than could a landlord who effects an unlawful entry and detainer by having one of his employees remove a tenant, or by having a locksmith change the locks. In any such case, the principal, the one inducing the removal, would bear responsibility and could not escape that responsibility by having his acts accomplished through the efforts of someone else.

Accepting for present purposes, as we must, the contention by plaintiffs that Lynn told James Downing to remove plaintiffs' belongings, we are satisfied that plaintiffs produced sufficient evidence to entitle them to proceed to trial against Lynn. Their complaint should not have been dismissed by summary judgment.

## II

The grant of summary judgment as to Fox & Lazo was also error. Lynn was an employee of Fox & Lazo. Under basic principles of *respondeat superior,* an employer is responsible for the wrongful acts of its employee committed while the employee is functioning within the scope of her employment.

> If the principal is the master of an agent who is his servant, the fault of the agent, if acting within the scope of his employment, will be imputed to the principal by reason of *respondeat superior.*
>
> [*JMB Enterprises v. Atlantic Employers Ins., Co.,* 228 *N.J.Super.* 610, 617, 550 A.2d 764 (App.Div.1988).]

See also, *Restatement (Second) of Agency,* § 219 (1958):

> (1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

In dealing with plaintiffs, with Downing and with the Millers, it seems clear that Lynn was acting within the scope of her employ-

ment with Fox & Lazo. We are aware of no claim to the contrary nor can we conceive of any basis for such a claim. Thus, under the well-established principles just cited, plaintiffs have a right to proceed against Fox & Lazo, just as they can proceed against Lynn, and their complaint against Fox & Lazo should not have been dismissed by summary judgment.

### III

■ Plaintiffs' complaint against the Millers stands on a less solid foundation. Although Fox & Lazo (and thus Lynn) were the Millers' agents, they were not employees of the Millers. For purposes of defining a principal—agent relationship with respect to tort liability to a third party, Fox & Lazo (and Lynn) were "independent contractors" and not "servants," and thus the *respondeat superior* concept is inapplicable:

> It is not every agent whose fault is attributable to the principal. If the principal is the master of an agent who is his servant, the fault of the agent, if acting within the scope of his employment, will be imputed to the principal by *respondeat superior.* But there is a vast difference between an employee agent and a non-employee agent.
>
> [*JMB Enterprises v. Atlantic Employers Ins., Co., supra,* 228 *N.J.Super.* at 617, 550 *A.*2d 764.]

Thus, in order to impose liability on the Millers, it is not sufficient to find that their agents, Fox & Lazo, did something wrong. There must also be a showing that the Millers themselves acted unreasonably or wrongfully in some way. *Id.* at 617–18, 550 *A.*2d 764.

■ Plaintiffs do assert such wrongdoing by the Millers, although those claims are not fully developed. They allege that the Millers had led Downing to believe he could move into the premises in August, notwithstanding that the plaintiffs had not yet vacated the premises nor had the Millers obtained a warrant for their eviction. And they claim that the Millers had given "that impression" to Lynn and, inferentially, that Lynn had acted in reliance on the Millers' statement when she told Downing to remove plaintiffs' belongings from the apartment. While that

claim may be tenuous,[5] we are satisfied that plaintiffs submitted enough to withstand the motion for summary judgment, that defendants did not demonstrate the absence of any valid claim against the Millers, and that the plaintiffs should have had an opportunity to proceed to trial to attempt to establish their case. Their chance of success may be problematical, but it is not so unlikely as to meet the standard of *Brill v. Guardian Life Ins. Co., supra*, which would deprive them of the opportunity to try.

## IV

Plaintiffs' complaint also included a count alleging a violation of the Consumer Fraud Act, *N.J.S.A.* 56:8–2 et seq., a count alleging wrongful distraint, conversion, trover and replevin and a final count charging intentional infliction of emotional distress. All of those counts were dismissed by the trial court and we find no error in that action.

The trial court found the Consumer Fraud Act inapplicable to the facts alleged here, and we agree. The essence of that statute is the prohibition of certain actions declared to be "an unlawful practice." Those acts include such things as an unconscionable commercial practice, deception, fraud, false pretense, false promise, etc. None of those concepts are relevant here and nothing of which plaintiffs complain would constitute a violation of the Consumer Fraud Act.[6]

---

[5] In granting summary judgment dismissing plaintiffs' claim as to the Millers, the trial court based its decision on the restrictive reading of the unlawful entry and detainer statute which we rejected above (that only those who physically removed plaintiffs' goods could be held responsible) and thus it did not deal with the merits or sufficiency of plaintiffs' claim as we have outlined it.

[6] We do not mean to suggest that real estate transactions or the actions of real estate brokers are not covered by our Consumer Fraud Act. They are. *See, Daaleman v. Elizabethtown Gas Co.,* 77 *N.J.* 267, 270, 390 *A.2d* 566 (1978); *Woodrick v. Jack J. Burke Real Estate,* 306 *N.J.Super.* 61, 703 *A.2d* 306 (App.Div. 1997).

■ Little need be said of the other asserted grounds of liability. Plaintiffs submit no demonstration of any substantial emotional distress which would approach the degree necessary to underlie any recovery on that basis. Nor, at least as to the defendants named here, do they show that the unlawful acts of which they complain were either "intentional" or "outrageous." *Morgan v. Union County Board of Chosen Freeholders,* 268 *N.J.Super.* 337, 354, 633 *A.*2d 985 (App.Div.1993), *certif. denied,* 135 *N.J.* 468, 640 *A.*2d 850 (1994). The other claims are neither pursued nor developed in plaintiffs' brief and we see no merit in any of them.

## V

Plaintiffs also complain of the court's refusal to permit them to amend their complaint to include a new count alleging negligence. The court found that the proposed amendment came much too late and declined to permit it primarily for that reason. We agree, and we also note that allegations of negligence are totally inconsistent with the other allegations which underlie plaintiffs' complaint. There was no error in denying the request to amend.

The dismissal of the complaint alleging unlawful entry and detainer as against all the defendants is reversed; in all other respects the judgment under appeal is affirmed; and the matter is remanded for further proceedings consistent with this opinion.