842 A.2d 255 (2004)
367 N.J. Super. 141
Paul J. NEWMAN, Plaintiff-Appellant,
v.
ISUZU MOTORS AMERICA, INC., Isuzu Motors Limited, American Isuzu Motors Inc., Subaru-Isuzu Automotive, Inc., Rosalie Holmes, Maddalena Scrozzo, Joseph Scrozzo, Kim Murphy Holmes, Joe Warren, Annette Warren, Defendants,
Daniel Dean, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 6, 2004.
Decided February 25, 2004.
*256 Porzio, Bromberg & Newman, Morristown, attorneys for appellant (Lauren E. Handler of counsel, Ms. Handler and Mary-Alice Barrett on the brief).
Respondent has not filed a brief.
Before Judges A.A. RODRIGUEZ, LEFELT and PAYNE.
The opinion of the court was delivered by PAYNE, J.A.D.
On September 21, 1998, Rosalie Holmes failed to stop at a stop sign and broadsided a 1994 Isuzu Rodeo occupied by Joseph Scrozzo, the driver, and Paul J. Newman, the front-seat passenger, causing the vehicle to turn over onto its roof. As a result of the accident, Newman suffered a fracture of his seventh thoracic vertebra, and is paralyzed from the level of the nipples on his chest, downward.
Prior to the accident, Rosalie Holmes had been babysitting for her granddaughter, Kimiesha, at the request of the child's custodial mother, Kim Murphy Holmes, who at the time lived apart from Rosalie Holmes and from Kimiesha's father, Daniel Dean. The babysitting took place at the home of Joe and Annette Warren, for whom Rosalie Holmes occasionally provided babysitting services. When the accident occurred, Rosalie Holmes was driving Kimiesha to Dean's residence, at his request. Dean had intended to pick up his daughter but had encountered mechanical problems with his car. In addition to the Dean child, Holmes also had as a passenger the six-year-old child of Joe and Annette Warren. The car that Rosalie Holmes was driving was insured with Prudential Property and Casualty Insurance Company under a policy with a per person limit of $50,000.
Following the accident, Newman filed suit seeking damages as the result of his injuries from, among others, Isuzu, Rosalie Holmes, Joseph and Maddalena Scrozzo, Kim Murphy Holmes, Daniel Dean, and Joe and Annette Warren. Newman premised liability on the part of Dean and the other parents on a theory of agency. A settlement was reached between Newman and Isuzu and between Newman and the Warrens for undisclosed amounts, and Newman's action against them was dismissed. Additionally Newman settled with Rosalie Holmes and Kim Murphy Holmes (the Holmes defendants) for the $50,000 policy limit of Rosalie Holmes' insurance. *257 A proof hearing was held to determine the extent of the liability of Dean, who had defaulted.
The transcript of the proof hearing has not been provided as part of the record on appeal, contrary to Rule 2:5-3(b), and as a result, we are unable to determine what proofs were presented on behalf of Newman or what legal arguments were made. However, the transcribed decision of the trial judge discloses, without discussion as to rationale (but see Rule 1:6-2(f)), an award of ten million dollars allocated as follows: 95% jointly to Isuzu and Rosalie Holmes; 4% to Scrozzo; and 1% to Dean. As a consequence, a final judgment against Dean in the amount of $100,000 was entered.
Plaintiff moved for reconsideration on grounds that are not fully disclosed in the record, which, contrary to Rules 2:6-1(a) and 2:5-3(b), fails to contain either the motion papers or a transcript of the hearing on the motion, if one took place. In a written decision dated October 31, 2002, the court granted plaintiff's motion, but allegedly in a sua sponte fashion, it vacated the default judgment against Dean, entering instead a judgment in his favor based upon the court's finding that the release entered between Newman and the Holmes defendants extinguished any liability on the part of Dean, the principal, as the result of his agency relationship with Rosalie Holmes. An order embodying these rulings was simultaneously entered.
Newman has appealed from the court's orders. On appeal, he argues that (1) the release of the Holmes defendants did not operate to extinguish the liability of Dean; (2) the court erred in attributing different percentages of liability to Dean as principal and Rosalie Holmes as agent; and (3) the court erred in assessing a percentage of fault against defendant Isuzu in the absence of any evidence of its liability. We reverse.

I.
At the outset, we express some doubt as to whether the theory of liability employed by Newman in seeking damages against Dean has been or should be recognized in the context presented. We assume that Newman sought to proceed on a theory of gratuitous agency and to hold Dean liable on a theory of respondeat superior, since there is no evidence in the record before us to support a claim that Dean had compensated or planned to compensate Rosalie Holmes for any of her services, and there is no evidence of independent negligence on Dean's part. However, we are unable to discern whether any legal support for the utilization of those theories in this case was proffered at the time that the default judgment was obtained or at any other time. Certainly, nothing in the meager record that has been supplied to us on appeal suggests that any consideration was given to the issue of liability, although the existence of an undefined agency relationship was recognized without further comment by the court.
Given the seemingly novel nature of Newman's theory of recovery, we find that it would constitute an abuse of discretion for the court not to require Newman to demonstrate legal grounds supporting his claim of a right to relief against Dean. Douglas v. Harris, 35 N.J. 270, 276-81, 173 A.2d 1 (1961) (discussing power of court to require proof of liability); Slowinski v. Valley Nat'l Bank, 264 N.J.Super. 172, 183, 624 A.2d 85 (App.Div.1993) (a successful plaintiff seeking a default judgment can be required to furnish some proof on the merits to show entitlement to the relief demanded); Edelstein v. Toyota Motors Distributors, 176 N.J.Super. 57, 63-64, 422 A.2d 101 (App.Div.1980) (vacating *258 default judgment when plaintiff, seeking to revoke his acceptance of a car, had presented no proof that he had contracted with the manufacturer or that the distributor was an agent of the manufacturer); Williams v. Page, 160 N.J.Super. 354, 369, 389 A.2d 1012 (App.Div.1978) (trial judge had discretion to require proof of liability); Metric Investment, Inc. v. Patterson, 98 N.J.Super. 130, 133, 236 A.2d 187 (Law Div.1967) (the entry of default does not necessarily obviate the obligation of plaintiff to furnish proof on the issue of liability), aff'd 101 N.J.Super. 301, 244 A.2d 311 (App.Div.1968). Cf. also Prickett v. Allard, 126 N.J.Super. 438, 440, 315 A.2d 51 (App.Div.) (denying default judgment to foreclose a tax sale certificate on grounds of failure to state a claim when plaintiff's complaint on its face demonstrated that the action was barred by the statute of limitations), aff'd o.b., 66 N.J. 6, 326 A.2d 688 (1974); In re Estate of Sharp, 151 N.J.Super. 579, 582, 377 A.2d 730 (Ch.Div. 1977), mod. 163 N.J.Super. 148, 394 A.2d 381 (App.Div.1978) (holding that the court may, sua sponte, refuse to enter judgment for plaintiff if the complaint on its face fails to state a cause of action as to which relief can be granted).
We do not rule at this time that Newman's theory of vicarious liability premised upon the existence of a gratuitous agency is legally non-cognizable. The issue was not raised before us, and we decline to determine it dispositively without the benefit of a record and full and measured legal argument based upon it.
However, we question whether a legal basis for vicarious liability can be demonstrated in the circumstances presented. Moreover, we admit to being troubled by the practical consequences of imposing such liability on a person, as principal, for a tort independently committed by another, simply because the tortfeasor happened to be performing a favor for the alleged principal at the time that the injury-causing conduct occurred. The bare bones of agency law may support the existence of an agency relationship in this context. See, e.g., Restatement (Second) of Agency, § 1, cmt. b to Subsection (1) (1958). However, whether vicarious liability can be imposed as the result of the existence of this agency relation will depend on, among other things, the degree of control exercised by Dean (see Wright v. State, 169 N.J. 422, 436-37, 778 A.2d 443 (2001)) and the characterization of his relationship with Rosalie Holmes as that of master and servant or another form of agency. Compare, e.g., Restatement, supra, § 219 (When master is liable for torts of servant) with § 250 (Non-liability for physical harm by non-servant agents). Cf. also Baldasarre v. Butler, 132 N.J. 278, 291, 625 A.2d 458 (1993); Levin v. Lynn, 310 N.J.Super. 177, 186, 708 A.2d 454 (App.Div.1998); JMB Enterprises v. Atlantic Employers Ins. Co., 228 N.J.Super. 610, 617, 550 A.2d 764 (App.Div.1988) ("It is not every agent whose fault is attributable to the principal.").
We deem a consideration of the social and economic context of this case to be important as well to a determination of whether vicarious liability should be recognized. See Wright, supra, 169 N.J. at 436, 778 A.2d 443. Here, it appears to us at least superficially that recognition of vicarious liability is beneficial to Newman, in that it increases his sources of recovery, but that it cannot otherwise be rationalized as a means of regulating conduct, justly apportioning liability or spreading the cost of injury. Rather, it may act in a reverse fashion, impacting such common social accommodations as car pooling and running errands, as well as the provision of gratuitous services to persons such as the elderly, by imposing unforeseeable, uncontrollable and potentially uninsured liability upon *259 the beneficiaries of such services without significant concomitant gain.
However, in the absence of any record or legal argument, we are reluctant to decide whether recognition of a cause of action for respondeat superior liability based upon agency principles can be legally sustained in this context. This is a matter that we leave in the first instance to the trial judge.

II.
Turning to the issues raised by Newman in his appeal, we first address the question of whether recovery against Dean was precluded by the settlement and release of claims against the Holmes defendants. In evaluating this issue and the remaining issues raised in this appeal, we assume, without deciding, that a legally cognizable cause of action based upon agency principles has been pled against Dean in this action.
As we stated previously, the claim by Newman against the Holmes defendants was settled for the sum of $50,000, constituting the full limit of auto insurance coverage available to Rosalie Holmes, but only a fraction of the amount of Newman's damages. The release signed at the time of the settlement discharged:
the Releasee(s), Rosalie Holmes, Kim (Holmes) Murphy, and Prudential Property and Casualty Insurance Company and any agents, servants, successors, firms, or corporations who are or might be liable in any way from any and all claims ... growing out [] of the accident....
Although the trial court initially imposed liability on Dean in the amount of $100,000 as the result of his agency relationship with Rosalie Holmes, on reconsideration, the court found without substantive analysis that:
the release entered into between the plaintiff and the defendant Holmes served to extinguish any responsibility on behalf of the defendant Dean. See Al[ji]an v. Ben Schlossber[g], Inc., 8 N.J.Super. 461, 73 A.2d 290 (Law Div. 1950); McBride v. Minstar, Inc. 283 N.J.Super. 471, 662 A.2d 592 (1994).
The court therefore reversed its prior judgment against Dean and entered a judgment of no cause for action in his favor. We find that the court erred in entering this order.
Aljian v. Ben Schlossberg, Inc., 8 N.J.Super. 461, 73 A.2d 290 (Law Div. 1950), upon which the trial court relied in reaching its conclusion, does hold, in the context of a suit against a principal and an agent for fire damage caused by the agent in attempting to thaw pipes with a blow torch, that settlement with one of two joint tortfeasors or settlement with a principal in an agency relationship relieves all other parties of liability. Id. at 464, 73 A.2d 290. However, eight years later, the Supreme Court, in Breen v. Peck, 28 N.J. 351, 146 A.2d 665 (1958) held otherwise, finding in the context of a suit for his commission by a real estate agent against a property's purchaser, following settlement with the property's seller, that the release of one tortfeasor does not release another unless the intent to do so has been expressed or the plaintiff has received full satisfaction. Id. at 357-58, 146 A.2d 665.
When A has a tort claim against both B and C, there is nothing which forbids him from dealing individually with B or C. If B or C pays A's claim in full, then A clearly has no further recourse against B or C for he has received full satisfaction and may not justly claim any more. But if B or C wants to compromise with A by giving only partial compensation, there is no reason why A should not be permitted to accept it and *260 legally discharge his claim against the partial payor while proceeding with his claim for the balance against the other tortfeasor; indeed the law affirmatively favors such compromises.... And if A executes a release running in favor of the partial payor alone, there is no basis, in policy or justice, for giving the release the legal effect of discharging the other wrongdoer, who paid nothing and was a total stranger to the release, unless that was the intention of the parties to the release....
[Ibid. (citations omitted).]
See also Daily v. Somberg, 28 N.J. 372, 384, 146 A.2d 676 (1958).
This principle was also expressed in McFadden v. Turner, 159 N.J.Super. 360, 388 A.2d 244 (App.Div.1978). There, in an opinion by Judge Pressler, we held that a release of a hospital following settlement in the approximate amount of its liability as capped by charitable immunity did not bar a subsequent action against the hospital's employees for their tortious conduct. In that opinion, we held that there was no principled basis for distinguishing between cases in which suit against a second tortfeasor was permitted following settlement with a first (as in Breen) and cases in which the liability of the parties (as in McFadden) was premised upon an agency relationship, so long as liability could be demonstrated and plaintiff had not fully recovered for the damages incurred. Id. at 366-67, 388 A.2d 244.
Subsequently, in Cartel Capital v. Fireco of New Jersey, 81 N.J. 548, 410 A.2d 674 (1980) the Supreme Court recognized that: "Even when liability of one defendant is wholly vicarious, settlement with the primarily liable defendant may not necessarily release the other." Id. at 559, 410 A.2d 674. In such circumstances, the intent of the parties is controlling. Ibid. Both Breen and McFadden were cited as support for that position. Ibid.
We further applied the principles of Breen, McFadden and Cartel Capital in an agency context in De Los Santos v. Saddlehill, Inc., 211 N.J.Super. 253, 511 A.2d 721 (App.Div.1986), certif. denied, 107 N.J. 101, 526 A.2d 175 (1987), holding there that if the liability of an apartment building owner and managing agent for the death of a child in an elevator accident were simply derived from that of the entities performing repairs on the elevator, a settlement with those entities would not extinguish claims against the owner and managing agent. Id. at 263, 511 A.2d 721.
We recognize a departure from this line of precedent in McBride v. Minstar, Inc., 283 N.J.Super. 471, 662 A.2d 592 (Law Div.1994), aff'd o.b. sub nom McBride v. Raichle Molitor, USA, 283 N.J.Super. 422, 662 A.2d 567 (App.Div.), certif. denied, 143 N.J. 319, 670 A.2d 1061 (1995). However, we decline to follow that decision, finding its reasoning unpersuasive.
In McBride, the court found in what was arguably dictum that, as a matter of law, a release of an agent releases any claim against the agent's principal. McBride, supra, 283 N.J.Super. at 497, 662 A.2d 592. In reaching that conclusion, the court distinguished between cases in which tortfeasors were independently liable (in which case a release of one was not effective against another) and ones in which liability was derivative. In reconciling prior precedent, the court classified McFadden as a case involving independent liability on the part of the defendant hospital and its employees (id.)a classification that has no apparent basis in the facts as set forth in Judge Pressler's opinion. As we view it, the thrust of that opinion was directed to the continued viability of claims against an agent in instances in which full compensation *261 for injuries had not been obtained from the derivatively liable principal.
Further, the court in McBride distinguished Cartel by stating that it "only indicates that the release of an employee will not release the employer where the parties have expressly indicated an intention not to release the employer." Id. at 559-61, 410 A.2d 674. We do not read Cartel that narrowly. What we find the decision to have held is that an agent and its principal remain jointly and severally liable for the torts of the agent until full satisfaction is obtained unless the release of the agent signifies otherwise. Cartel, supra, 81 N.J. at 559, 410 A.2d 674. The Restatement (Second) of Judgments § 51 is consistent with this position.
As a consequence, we do not find legal underpinnings sufficient to support the McBride court's deviation from precedent, and we decline to follow that decision, adopting instead the rationale of Breen, McFadden, Cartel, and De Los Santos, which establishes that, regardless of whether liability is independent or derivative, that liability is not extinguished by settlement with another tortfeasor unless a release of claims so provides or compensation for liability has been paid in full. In this context, we note that McBride was cited for the principle that a release of an agent releases the principal in Society Hill Condo. Ass'n, Inc. v. Society Hill Assoc., 347 N.J.Super. 163, 174, 789 A.2d 138 (App.Div.2002). However, that decision offered no significant further analysis and turned in large measure on the language of the release involved.
Addressing the release entered by the parties in this case, we find nothing to suggest an intent on the part of any of its signatories to release claims pending against Dean. Dean is not mentioned by name, nor is there a reference in the release to the liability of a principal. As a final matter, the release, when given a common sense reading, appears to pertain only to those whose liability arises because of affiliated corporate status or because they acted at the direction of the releasing parties. Neither category applies to Dean.
However, because the court's order dismissing claims against Dean was entered without a hearing on the issue, we lack any evidence other than the language of the release itself as to the circumstances under which claims against Kim Murphy Holmes were included among those released against Rosalie Holmes. Further, we lack any evidence of the intent of the parties at the time of the release. We note that a personal relationship had existed or continued to exist between Kim Murphy Holmes and Dean and that Kimiesha was their child. We do not know the exact nature of that relationship or whether it provided a basis for an argument that a release of claims against Kim Murphy Holmes operated to release claims against Dean. But see Domanske v. Rapid-American Corp., 330 N.J.Super. 241, 247-48, 749 A.2d 399 (App.Div.2000) (unexpressed intent in signing release does not raise issue of fact sufficient to avoid summary judgment). As a consequence, we reverse the order of the trial judge entering a judgment of no cause for action in Dean's favor and remand for further consideration of the issue in light of an full factual record.

III.
Newman additionally challenges the apportionment of liability by the court in its initial judgment, arguing that no liability should have been imposed upon Isuzu because no proof of its fault was adduced and that any derivative liability on the part of Dean as principal had to be in the same percentage as that assessed against Dean's agent, Rosalie Holmes. We again reverse.
*262 We find no basis upon which to conclude that Rosalie Holmes and Isuzu should have both been held liable for 95% of Newman's injuries. Holmes was sued on the basis of her alleged negligence; Isuzu was sued on strict liability grounds. Their fault was alleged to have combined to cause Newman's loss. That fault was not concurrent or co-extensive. Consequently, liability, if any, should have been separately assessed. N.J.S.A. 2A:15-5.2(a)(2).
Because we were not supplied with a transcript of the proof hearing, we cannot fully evaluate Newman's argument that no liability should have been assessed against Isuzu because he produced no evidence of its fault at that hearing. We assume some evidential basis for the court's conclusion of liability, although what it was is unknown to us. However, if the finding of liability had no evidential basis, that fact would provide an additional ground for reversal in this case.
We find that Newman had no obligation in the proof hearing to demonstrate fault on the part of the settling tortfeasors, with the exception of Rosalie Holmes, upon whose liability that of Dean depends. Dean did not appear in the action, and he thus filed neither a crossclaim for contribution nor any other document that would provide notice to Newman that he was asserting a right to a credit based upon the settlements reached in the matter. Thus his right to an apportionment of damages was waived. See Young v. Latta, 123 N.J. 584, 596-98, 589 A.2d 1020 (1991) (holding that the right of a non-settling defendant to a credit as the result of a settlement with a co-defendant can be asserted without a cross-claim for contribution, but that fair and timely notice to plaintiff of an assertion of that right must be given). See also Green v. General Motors Corp., 310 N.J.Super. 507, 546, 709 A.2d 205 (App.Div.) (placing burden on defendant to demonstrate that a settling tortfeasor was liable for a percentage of plaintiff's damages, and holding that if apportionment is not requested prior to trial, it is waived), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998). We have found such waiver to exist even if it creates a windfall for the plaintiff. Id. at 547, 709 A.2d 205. Although the precedent that we have cited did not arise in a default context, we see no reason to distinguish between the rights and responsibilities of a defendant who has appeared and one who has not.
As a final matter, we agree with Newman that the court erred in assessing vicarious liability against Dean as principal that was less than that of the agent for whose conduct he was being held responsible on a theory of respondeat superior. Vicarious liability in this context must equal that of the underlying tortfeasor. Kelley v. Curtiss, 16 N.J. 265, 270, 108 A.2d 431 (1954); Moss v. Jones, 93 N.J.Super. 179, 184, 225 A.2d 369 (App.Div.1966).
Reversed and remanded for further proceedings in accordance with this opinion.