**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1856-18T2

PEDRO MEDINA,

    Plaintiff-Appellant,

v.

OFFICER DENNIS MCFADDEN,
RECORDS OFFICER OF THE
CARTERET POLICE DEPARTMENT,
and MIDDLESEX COUNTY
PROSECUTOR'S OFFICE,

    Defendants-Respondents.

_____

Submitted May 19, 2020 – Decided June 9, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1703-18.

Pedro Medina, appellant pro se.

Respondents have not filed a brief.

PER CURIAM

Plaintiff Pedro Medina appeals from a September 28, 2018 Law Division order, which dismissed his complaint with prejudice and denied his request for a record under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13 and common law right-of-access. We affirm.

I.

Plaintiff was tried before a jury and found guilty on three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); three counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and one count of second-degree attempted sexual assault, N.J.S.A. 2C:5-1 and 14-2(b). State v. P.L.M., No. A-2368-05 (App. Div. Apr. 17, 2009) (slip op. at 1). The three victims were under the age of thirteen. One of the victims of the assault was A.M. He was sentenced to forty-eight years of imprisonment and required to serve eighty-five percent of his sentence before becoming eligible for parole, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On appeal, we rejected four of defendant's six arguments and remanded to the trial court to determine: (1) whether evidence of A.M.'s prior sexual history was improperly excluded; and (2) whether defendant was improperly sentenced. State v. P.L.M., No. A-2368-05 (App. Div. June 18, 2007) (slip op. at 42-43).

2

On remand, the same judge who presided over the trial conducted a Rule 104 hearing on these issues. State v. P.L.M., No. A-2368-05[1] (App. Div. Apr. 17, 2009) (slip op. at 2).

Following the hearing, the judge again rejected defendant's claims and concluded there was insufficient evidence of A.M.'s sexual history to warrant piercing the Rape Shield Law, N.J.S.A. 2C:14-7. The judge found there was no basis for admitting an alleged conversation between A.M. and her therapist, Linda Shaw, M.D., regarding "prior sexual partners," because A.M.'s credibility was not at issue. Defendant's motion for a new trial was denied and the judge reimposed the same sixteen-year term of imprisonment, subject to NERA, as to the conviction involving A.M.

Plaintiff appealed a second time, arguing the judge, on remand, violated his constitutional right to present evidence and infringed upon his right under the Confrontation Clause by excluding evidence of A.M.'s prior sexual history. We denied both of plaintiff's claims based "largely on the [trial] judge's findings of fact." State v. P.L.M., No. A-2368-05 (App. Div. Apr. 17, 2009) (slip op. at 7). Additionally, we noted that the judge aptly found: (1) there was no proof A.M. had been sexually active; (2) there was no proof A.M. reported prior sexual

---

[1] Both appeals were referenced with the same docket number.

partners to Dr. Shaw, other than what appears in the doctor's notes; and (3) A.M.'s grandmother denied making threats to A.M. regarding an exam for virginity. We also rejected plaintiff's request for resentencing.

On August 22, 2016, plaintiff filed a request under OPRA with the Middlesex County Prosecutor's Office (MCPO) seeking an "unedited-original" copy of A.M.'s diary. He argued that if A.M. recorded any sexual abuse in her diary, it may "point the finger" at someone else and exonerate him. Relying on the provision of OPRA which provides that the public is not entitled to access to records of criminal investigations, the prosecutor denied the request by way of a letter dated September 30, 2016. The prosecutor explained that A.M.'s diary was a "criminal investigatory record," and not a public record that can be released, citing Kovalcik v. Somerset Cty. Prosecutor's Office, 206 N.J. 581, 591 (2011) in support of its position.

The September 30 letter also stated that the Government Records Council (GRC) held in Janeczko v. Division of Criminal Justice, GRC Complaint Nos. 2002-79 and 2002-80, that the criminal investigatory records exception applies to all investigations "resolved and unresolved" and "without reference to the status of the investigation." The prosecutor stated the record requested was not a public record under OPRA and could not be released.

On November 6, 2017, under the "Right to Know Law,"[2] plaintiff requested from the records office of the Carteret Police Department "[a] complete copy of the Carteret Police case file number 0307083569 including a copy of A.M.'s diary obtained from Teresa Quinones by Carteret Police Department and [MCPO]," which was denied.

On February 23, 2018, plaintiff appealed the decisions denying his OPRA and right-of-access requests by filing a Law Division complaint. Defendants, Officer Dennis McFadden and the MCPO, filed a motion to dismiss the complaint. On September 28, 2018, the judge conducted a hearing on defendants' motion. It is unclear whether the judge placed any findings on the record.

Following the hearing, the judge entered two orders. The first order granted MCPO's motion to dismiss plaintiff's right-of-access complaint with prejudice; the second order denied plaintiff's OPRA request for A.M.'s diary and his application to proceed as indigent. The judge did not file a written statement of reasons.

---

[2] We construe plaintiff's "Right to Know" request as a right-of-access request.

On appeal, plaintiff argues that: (1) the MCPO improperly withheld A.M.'s diary during the criminal proceedings under N.J.S.A. 41:1A-1.1; (2) the MCPO's failure to turn over the diary, either prior to trial or at the Rule 104 remand hearing, constituted a discovery violation under Rule 3:13-2; and (3) because A.M. and Dr. Shaw's testimony at the remand hearing were in conflict with A.M.'s prior testimony, the diary was a critical piece of evidence needed to ascertain the truth.

We note that although plaintiff is appealing from the dismissal of his complaint, he has not provided the court with a transcript of the September 28, 2018 motion hearing. Rule 2:5-3(a) requires the appellant to request the preparation and filing of the transcript. Plaintiff's failure to include this transcript makes it impossible for this court to determine whether the judge's factual findings are supported by competent evidence in the record or whether he properly considered the legal arguments raised. See Newman v. Isuzu Motors Am., Inc., 367 N.J. Super. 141, 145 (App. Div. 2004).

The record on appeal shall consist of all papers on file in the court below. R. 2:5-4(a). Moreover, the rule requires an appellant to request a transcript "of the proceedings before the court . . . from which the appeal is taken . . . ." The

6

transcript must include the entire proceeding, including the reasons given by the trial judge, unless a written statement of reasons was filed.  R. 2:5-3(b).

If an appellant fails to submit a transcript of the proceeding, and the deficiency prohibits review of a particular claim, the court may decline to address the issue and dismiss the appeal.  Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55 (2004).  Despite this deficiency, dismissal of plaintiff's appeal is not warranted here.  We are satisfied that the pleadings and the record on defendants' motion to dismiss the complaint provide a sufficient basis for consideration of the merits of plaintiff's appeal.

II.

We review de novo the issue of whether access to public records under OPRA and the manner of its effectuation are warranted.  Drinker Biddle & Reath, LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011) (quoting MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. 534, 543 (2005)).  We do not disturb factual findings so long as they are "supported by adequate, substantial and credible evidence."  Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988) (quoting Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974)).  We apply the same standard of review "to the court's legal conclusions with respect to whether access to public

records is appropriate under the common-law right[-]of[-]access." Drinker Biddle, 421 N.J. Super. at 497.

OPRA was enacted "to promote transparency in the operation of government." Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012). In passing OPRA, "the [l]egislature declared it public policy that government records 'shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest,' and that any limitation of the right of action accorded by OPRA 'shall be construed in favor of the public's right[-]of[-]access.'" Paff v. Ocean Cty. Prosecutor's Office, 235 N.J. 1, 17-18 (2018) (quoting N.J.S.A. 47:1A-1).

"A [g]overnment record" has been broadly defined by OPRA to include any record "made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof," or any record "received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof. . . ." N.J.S.A. 47:1A-1.1.

"[C]riminal investigatory records" constitute one of multiple categories of records that are excluded from OPRA's definition of "[g]overnment record[s]."

Ibid.  A "criminal investigatory record" is defined as "a record which is not required by law to be made, maintained or kept on file that is held by a law enforcement agency which pertains to any criminal investigation or related civil enforcement proceeding."  Ibid.

The public agency seeking to exempt disclosure has the burden of proving that denial of access is authorized by an exception to the statute.  N.J.S.A. 47:1A-6.  Accordingly, a public agency seeking to withhold a record from disclosure as a criminal investigatory record must satisfy "both prongs of the exception" by demonstrating that the record is (1) "not required by law to be made, maintained or kept on file" and (2) that it pertains or pertained to a criminal investigation or related criminal enforcement proceeding.  N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 565 (2017).

Plaintiff relies upon Lyndhurst in support of his argument.  In Lyndhurst the Court addressed the "not required by law" prong of N.J.S.A. 47:1A-1.1 in the context of Use of Force Reports (UFRs) and Motor Vehicle Recorder (MVR) recordings.  Id. at 564-69.  The UFRs at issue were prepared in accordance with a Use of Force Policy that was promulgated by the Attorney General and applied to law enforcement across the State.  Id. at 565.  Based on the Attorney General's role as the State's chief law enforcement officer, the Court found that the Use of

Force Policy had the "force of law for police entities." Ibid. The Court concluded that Lyndhurst failed to demonstrate that UFRs were "not required by law to be made" under N.J.S.A. 47:1A-1.1 because the officers were required to prepare UFRs by order of the Attorney General. Ibid.

However, the Court held differently with respect to the MVR recordings. Id. at 567-69. When the opinion issued, there was no Attorney General directive addressing MVR recordings. Id. at 567. Additionally, it was unclear whether the MVR camera captured the footage automatically or whether it had been activated by the officers "in an exercise of discretion or in response to an order at the local level." Ibid. Therefore, the Court determined there was no evidence that Lyndhurst police officers were "required by law" to make the MVR recordings in dispute, and accordingly, concluded that the recordings came under the exemption in N.J.S.A. 47:1A-1.1 for criminal investigatory records. Id. 567-68.

We have stated repeatedly that there is no legal requirement regarding "the making, maintaining or keeping on file the results of an investigation by a law enforcement official or agency into the alleged commission of a criminal offense." River Edge Sav. & Loan Ass'n v. Hyland, 165 N.J. Super. 540, 545 (App. Div. 1979); see also State v. Marshall, 148 N.J. 89, 273-75 (1997); Bent

v. Twp. of Stafford Police Dep't, Custodian of Records, 381 N.J. Super. 30, 39 (App. Div. 2005).

Here, A.M.'s diary came into defendants' possession during the course of the criminal investigation. Moreover, plaintiff conceded in his brief that "A.M.'s diary constitutes a 'criminal investigatory record.'" Plaintiff asserts A.M.'s diary is no longer exempt under OPRA because the investigation ended. We reject plaintiff's argument.

As stated in the MCPO's September 30, 2016 letter denying plaintiff's request, the GRC has held that the exemption for criminal investigatory records applies to all investigations, "resolved or unresolved[,] . . . without reference to the status of the investigation." Janeczko v. Division of Criminal Justice, GRC Complaint Nos. 2002-79 and 2002-80. Moreover, the plain language of the statute states that the second prong of the analysis is satisfied if the record "pertains to any criminal investigation or related civil enforcement proceeding." N.J.S.A. 47:1A-1.1. There is no requirement that the investigation is continuing as evidenced by the fact that there is a separate, distinct OPRA exception for ongoing investigations. N.J.S.A. 47:1A-3.

Our courts do not consider the status of a subject investigation when determining whether to apply the criminal investigatory records exception to

OPRA. Lyndhurst, 229 N.J. at 569 ("The dash-cam recordings also pertained to the SRT investigation into [the] fatal shooting, . . . [and] therefore fall within the criminal investigatory records exception."); O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 385-86 (App. Div. 2009) ("In the absence of a factual showing that any of the reports sought in this matter pertained to an actual criminal investigation . . . there is no basis to consider all such reports . . . .").

Here, it is undisputed that A.M.'s diary is a record of a criminal investigation, which is exempt from disclosure under the second prong of the criminal investigatory records exception under OPRA, even though the criminal investigation is closed. We reject plaintiff's argument that A.M.'s diary is analogous to an MVR. Therefore, the judge did not err in dismissing plaintiff's complaint under OPRA.

III.

We also reject plaintiff's contention that he was entitled to access to A.M.'s diary under the common law. A common law right-of-access to public records exists parallel to and unrestricted by OPRA. See Mason v. City of Hoboken, 196 N.J. 51, 67 (2008). A public record under the common law is "one that is made by a public official in the exercise of his or her public function, either because the record was required or directed by law to be made or kept, or

because it was filed in a public office." Keddie v. Rutgers, 148 N.J. 36, 49 (1997) (citing Higg-A-Rella, Inc. v. Cty. of Essex, 141 N.J. 35, 46 (1995); N. Jersey Newspapers Co. v. Passaic Cty. Bd. of Chosen Freeholders, 127 N.J. 9, 13 (1992); Nero v. Hyland, 76 N.J. 213, 221-22 (1978)). Compared to OPRA, the definition of public record under the common law is much broader. Mason, 196 N.J. at 67.

The common law right-to-access, however, is not absolute. Keddie, 148 N.J. at 49-50. An individual seeking public records under the common law must meet the following requirements. Id. at 50. First, the records sought "must be common-law public documents." Ibid. Second, "the person seeking access must 'establish an interest in the subject matter of the material.'" Ibid. (quoting S. Jersey Publ'g Co. v. New Jersey Expressway Auth., 124 N.J. 478, 487 (1991)). Third, a "citizen's right to access 'must be balanced against the State's interest in preventing disclosure.'" Ibid. (quoting Higg-A-Rella, 141 N.J. at 46).

When balancing the requestor's interest against the State's interest in preventing disclosure, the court must consider:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government;

(2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed;

(3) the extent to which agency self-evaluation, program improvement, or other decision-making will be chilled by disclosure;

(4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers;

(5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and

(6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

Drinker Biddle, 421 N.J. Super. 489, 500 (App. Div. 2011).

Here, plaintiff's failure to include the transcript precludes us from determining whether the judge balanced the factors. However, we note the following.

As to the first factor, the record at issue is the diary of a minor female, which may contain her private, intimate thoughts. Parents may be reluctant to turn over records setting forth their children's expressions if a member of the public can gain unfiltered access to such records. This factor weighs strongly against disclosure.

As to the second factor, A.M. is now approximately thirty years old. Her diary may include her thoughts and feelings as a young girl who was sexually abused. Making this information available now would most likely have a severe detrimental effect on A.M., who is entitled to maintain the confidentiality of her past. The remaining factors enumerated in <u>Drinker Biddle</u> are not germane to our analysis.

Moreover, it is unlikely that the individual who provided the police with A.M.'s diary ever expected it would later become available to plaintiff or the public. Therefore, the judge properly dismissed plaintiff's complaint with prejudice under the common law right-of-access theory.

We have considered plaintiff's other arguments and conclude that they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION