**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0949-20

4 HIGHPOINT, LLC,

     Plaintiff-Respondent,

v.

JOSEPH DURELLI and
CHERYL DURELLI,

     Defendants-Appellants.

_____

Submitted November 30, 2021 – Decided January 12, 2022

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. DC-003964-20.

Joseph Durelli and Cheryl Durelli, appellants pro se.

Arons & Arons, LLC, attorneys for respondent (Jeffrey Arons, on the brief).

PER CURIAM

In this ejectment action filed under N.J.S.A. 2A:35-1 to -3, defendants

Joseph and Cheryl Durelli appeal from a November 16, 2020 Special Civil Part

order that granted possession of a residential property located in Hamilton to the property's owner, plaintiff 4 Highpoint LLC, and directed the removal of defendants, during a moratorium against removal of evicted tenants and foreclosed owners under the Governor's Executive Order No. 106 (EO 106). On appeal, defendants specifically argue that their removal was contrary to EO 106 and that the trial court "lack[ed] jurisdiction."

We conclude defendants' appeal is now moot because even if they were correct in their contentions on appeal, the moratorium they rely upon concluded on December 31, 2021.[1] Even if it had not ended, we would affirm the challenged order because EO 106 was not applicable to ejectment actions and, in any event, the trial court correctly concluded that the removal of defendants was in the interest of justice under the circumstances presented.

The facts found by the trial court after a hearing and the matter's procedural history are summarized as follows. Defendants were the prior owners of the subject property before their mortgagee obtained a foreclosure

---

[1] On August 4, 2021, the Governor issued Executive Order No. 249 (EO 249), which rescinded EO 106's moratorium on evictions based on any reason other than nonpayment of rent. Exec. Order No. 249 (Aug. 4, 2021), 53 N.J.R. 1415(b) (Sept. 7, 2021). In addition, EO 249 stayed removals resulting from foreclosure proceedings until November 15, 2021. Ibid. Moratoriums against removal of most tenants ended December 31, 2021.

A-0949-20

judgment in October 2018. After the denial of defendants' motion to stay the Sherriff's sale, the mortgagee purchased the property and obtained a writ of possession in January 2019. However, the mortgagee did not execute on the writ and instead sold the property to plaintiff in September 2020.

At the time of the purchase, plaintiff knew that the property was occupied and that EO 106 was in effect. After purchasing the property, plaintiff attempted to come to an agreement with defendants to either enter into a rental agreement or vacate the property. Defendants refused. Shortly thereafter, plaintiff instituted ejectment proceedings.

A virtual hearing was held where the trial court heard testimony from plaintiff's managing member, Arie Behar, and defendants. During the hearing, defendants testified as to their finances, their reasons for not wanting to move out of the property, the physical condition of the property, and their plans to look for another place to live. Behar testified that plaintiff purchased the property knowing that it was occupied and without inspection as well as the attempts to enter into a rental agreement with defendants or schedule a date by which to vacate.

On November 16, 2020, the trial court entered its order and issued a written decision. It concluded the EO 106 was not "meant to support or protect

A-0949-20

trespassers and criminal activity." Rather, because "[t]he Governor only mentioned eviction and foreclosure proceedings [and not] unlawful detainer actions or ejectment actions," the intent of EO 106 was to protect residents in those types of actions.

Nevertheless, the court went on to balance the equities, relying upon defendants' testimony about their finances and the declining state of the property's condition that defendants, who had not made any mortgage payments since 2010, could not afford to remedy. The trial court observed that "there was no indication that the damage[s to] the [property have] been repaired." It noted that, "[w]hether defendants have money and refuse to spend it to repair and upkeep the [property] or that they do not have money," defendants' "claims on loss of habitability [of the property] are as dire as the way they were expressed in their testimony." According to the trial court "[i]t is not just what was said, but how it was said," and that "[d]efendants have given no inclination to any further repair or upkeep of the [property and it] is only a matter of time before defendants will be constructively forced to move out." Simply put, it found that defendants "are trying to stay in the [property] to wear it out to uselessness."

A-0949-20

The trial court accepted that because of Joseph's age,[2] defendants had "a legitimate concern for his life during the pandemic." The court reasoned that "[i]t would be better to plan a move with social distancing in mind than to wait until the house [became] uninhabitable and risk having to make a sudden move." The court therefore held that "lockout is necessary in the interest of justice so that defendants will make a planned move rather than risk a sudden move due to habitability."

Defendants later filed a motion to stay the lockout. On April 1, 2021, the trial court denied defendants' motion because "the lockout . . . already occurred," and there was "nothing to stay.[3]" This appeal followed.

We first address the issue of mootness. On appeal defendants contend that they are entitled to regain possession of the subject property. As already noted, they rely upon EO 106's moratoriums on the removal of foreclosed owners and evicted tenants. They offer no other argument to warrant reversal. For example, they do not assert any argument that they maintained a right to possession

---

[2] We use defendants' first names to avoid any confusion caused by their common last name.

[3] Evidently, in March 2021, a Sheriff's officer executed on the writ of possession issued in this action. At that time, according to plaintiff, defendants had already left the premises.

5

superior to plaintiffs. The moratoriums have now expired. Under these circumstances, we conclude that the primary issue they present on appeal is moot as there is no reason to restore defendants' possession of the property. An issue becomes moot when a "decision . . . can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (alteration in original) (citation omitted). "[C]ourts of this state do not resolve issues that have become moot due to the passage of time or intervening events." Ibid. (alteration in original) (citation omitted).

Having determined that defendants' appeal is moot, we nonetheless briefly address defendants' argument that they are protected from removal under EO 106. We conclude that the trial court correctly determined that the EO 106 did not apply to ejectment actions.

An ejectment action is governed by N.J.S.A. 2A:35-1, which provides "[a]ny person claiming the right of possession of real property in the possession of another, or claiming title to such real property, shall be entitled to have his rights determined in an action in the superior court." Plaintiff bears "the burden of establishing his title, and if he fails . . . the judgment must go against him." Perlstein v. Pearce, 12 N.J. 198, 204 (1953). However, when a court finds in

A-0949-20

plaintiff's favor, it can issue a writ of possession. See Levin v. Lynn, 310 N.J. Super. 177, 182-83 (App. Div. 1998).

After defendants' appeal in this matter was perfected, in Talmadge Village LLC v. Wilson, 468 N.J. Super. 514 (App. Div. 2021), we held that "the governor's moratorium on evictions [did not] extend[] to persons having the legal status of squatters." Id. at 516. In Talmadge, the defendant lived in an apartment leased by his former girlfriend. Ibid. She terminated the relationship, did not renew her lease, and moved out when the lease expired. Ibid. The plaintiff learned that the defendant was still living in the apartment after a routine inspection. Ibid. Although the trial court found that the defendant did not have a lease and issued a judgment for possession in plaintiff's favor, it stayed removal pursuant to EO 106. Id. at 516. We vacated the stay of the removal reasoning that

> [s]ince defendant neither rented nor owned the subject premises when the trial court issued its . . . order, and plaintiff sought defendant's removal from the residential property by way of an ejectment, rather than an eviction or foreclosure proceeding, [it was] convinced [that] defendant's removal from the apartment was not barred under [EO 106].
>
> [Id. at 519.]

Consistent with our holding in Talmadge, we conclude that defendants here were not protected from removal under EO 106. The trial court correctly held that the purpose of EO 106 was to protect individuals with rightful possession from removal in eviction or foreclosure proceedings only, not trespassers. See id. at 519. Because of the foreclosure in October 2018, and subsequent writ of possession in January 2019, defendants did not own, rent, or have legal possession of the property by the time EO 106 became effective. And the challenged order was not entered in a tenancy or foreclosure action. Accordingly, their removal was not barred by EO 106 because its express language only bars removals of individuals in legal possession of the property, such as renters and foreclosed homeowners. See ibid. (citing Exec. Order No. 106 (Mar. 19, 2020), 52 N.J.R. 553(a) (Apr. 6, 2020)).

Finally, even if EO 106 arguably applied to defendants' situation, we also conclude the trial court properly determined that defendants' removal was warranted in the interest of justice.

We initially observe that our review of "[f]inal determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: 'we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly

A-0949-20

unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011) (citation omitted). "In that context," our Supreme Court has "emphasized that 'the appellate court therefore ponders whether, on the contrary, there is substantial evidence in support of the trial judge's findings and conclusions.'" Ibid. (citation omitted). Therefore, in reviewing a trial court's findings, we do not "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008). However, a trial court's legal determinations are not entitled to any special deference and are reviewed de novo. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

EO 106 prohibited the removal of a "lessee, tenant, homeowner, or any other person" from a residential property in eviction or foreclosure proceedings.[4] It further stated, in pertinent part, as follows:

> 2. While eviction and foreclosure proceedings may be initiated or continued during the time this Order is in effect, enforcement of all judgments for possession,

---

[4] The Governor issued EO 106 after his declaration of a Public Health Emergency and State of Emergency because of the COVID-19 pandemic.

warrants of removal, and writs of possession shall be stayed while this Order is in effect, <u>unless the court determines on its own motion or motion of the parties that enforcement is necessary in the interest of justice</u>. This Order does not affect any schedule of rent that is due.

3.   Sheriffs, court officers, and their agents shall refrain from acting to remove individuals from residential properties through the eviction or foreclosure processes during the time this Order is in effect, <u>unless the court determines on its own motion or motion of the parties that enforcement is necessary in the interest of justice</u>.

[<u>Exec. Order No. 106</u> (Mar. 19, 2020), 52 N.J.R. 553(a) (Apr. 6, 2020) (emphasis added).]

Here the trial court correctly concluded that the relief sought by plaintiff was not during the pendency of a foreclosure action or an eviction action, making EO 106 inapplicable to plaintiff's claim. Nevertheless, it conducted a detailed analysis of what was "in the interest of justice" in the present matter. The court essentially relied upon defendants' contentions that the property was in significant disrepair, and that they had not paid anything towards living at or maintaining the premises for years and concluded that to allow them to continue to live in the uninhabitable circumstances they described would not only harm plaintiff, who was entitled to possession, but would not be in defendants' best interest either. As we already noted, the judge found that defendants were better off making other living arrangements and proceeding through an orderly

A-0949-20

removal instead of waiting until essentially the house fell down around them. Under these circumstances, we have no cause to disturb the result here even if EO 106 was applicable.

To the extent that we have not specifically addressed any of defendants' remaining arguments, we find them to be without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0949-20